UNITED STATES of America,
Plaintiff–Appellee,

v.

Curtis Dennis CALLARMAN,
Defendant–Appellant.

No. 01–3039.

United States Court of Appeals,
Tenth Circuit.

Dec. 7, 2001.

Ronald E. Wurtz, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, District of Kansas, Topeka, KS, appearing for Appellant.

Thomas G. Luedke, Assistant United States Attorney (James E. Flory, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney, on the brief), Office of the United States Attorney, District of Kansas, Topeka, KS, appearing for Appellee.

Before TACHA, Chief Judge, PORFILIO, and BRISCOE, Circuit Judges.

TACHA, Chief Judge.

Defendant Curtis Callarman appeals the district court's order denying his motion to suppress cocaine found in an automobile in which he traveled. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

Topeka Police Officer Bruce Voigt was sitting in his police car on November 24, 1999, conducting surveillance on a "head shop"[1] known as "Wild Thangs II." Voigt observed a 1989 Chevrolet Beretta stop in the parking lot. A man, later identified as defendant Curtis Dennis Callarman, got out of the car and entered Wild Thangs II. After five to seven minutes in the establishment, Callarman returned to the car. The car, driven by Sonya Streeter, proceeded through the parking lot, stopped at an exit, and then proceeded to turn right onto the city street. Voigt contends that Streeter did not use a turn signal, while Streeter contends that she did.

Voigt followed the vehicle. While stopped behind Streeter and Callarman at a stoplight, Voigt noticed a crack in the car's front windshield. He pulled the car over. As he approached the car, Officer Voigt saw Callarman reaching down to the floor of the car. Voigt became concerned for his safety, and ordered Callarman out of the car. At this point, Voigt observed a knotted plastic bag on the floor of the car, which he believed to be cocaine. After opening the bag and confirming that it contained cocaine, Voigt arrested Callarman.

Callarman was prosecuted for possession of cocaine pursuant to 21 U.S.C. § 844(a). Callarman moved to suppress the cocaine, arguing that the initial stop was illegal, and that the subsequent seizure of cocaine was therefore inadmissible under *Wong Sun v. United States*, 371

---

1. "Headshop" is a slang term for a "drug paraphernalia store." *Indiana Prevention Resource Center Drug Slang Dictionary,* Indiana University, *http://www.drugs.indiana.edu/slang/* (visited Nov. 19, 2001).

U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The district court denied the motion, finding that the initial stop of the vehicle was supported by either probable cause or reasonable articulable suspicion. Callarman then entered a plea of guilty, reserving the right to appeal the court's suppression ruling. The district court sentenced Callarman to 46 months imprisonment. Callarman now appeals the denial of his motion to suppress.

## II. Discussion

Callarman argues that a traffic stop must be supported by probable cause rather than reasonable suspicion, and that neither the crack in the car's windshield nor the driver's failure to signal when turning from a private lot onto a public highway provided probable cause. We disagree.

### A. The Standard for Routine Traffic Stops

█ We begin by examining the appropriate legal standard for traffic stops. We review questions of law de novo. *United States v. Holt*, 264 F.3d 1215 (10th Cir. 2001).

█ A traffic stop, however brief, constitutes a seizure within the meaning of the Fourth Amendment, and is therefore only constitutional if it is "reasonable." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *United States v. Botero–Ospina* we set forth the standard governing the reasonableness of traffic stops: "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." 71 F.3d 783, 787 (10th Cir.1995) (en banc); *see also United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir.2001) (en banc) ("We have consistently applied the principles of *Terry v. Ohio* to routine traf-

fic stops." (citation omitted)). Reasonable suspicion is "a particularized and objective basis" for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). When determining whether an officer possessed a reasonable articulable suspicion, the subjective motivations of an arresting officer are irrelevant. *Botero–Ospina*, 71 F.3d at 787; *see also Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (adopting an objective approach).

Callarman argues that the Supreme Court's decision in *Whren* overturned *Botero–Ospina* and requires probable cause rather than reasonable suspicion to justify a traffic stop. In *Whren*, the Court stated that, "[a]s a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred." 517 U.S. at 810, 116 S.Ct. 1769. Other recent Supreme Court cases have also referred to a probable cause standard. *E.g., Arkansas v. Sullivan*, 532 U.S. 769, ——, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001); *City of Indianapolis v. Edmond*, 531 U.S. 32, 45, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).

█ While these cases indicate that probable cause is a *sufficient* ground for a stop, none of them indicates that it is *necessary* for a stop. Other Supreme Court and Tenth Circuit cases have held that reasonable articulable suspicion is also sufficient grounds to justify a stop. *E.g., United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir.1999) (finding that a traffic stop was supportable under a "reasonable articulable suspicion" standard). In *Knowles v. Iowa*, for example, the Court noted that a routine traffic stop "is a relatively brief encounter and is more

analogous to a so-called '*Terry* stop' . . . than to a formal arrest." 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). The *Knowles* Court also made clear that a routine traffic stop justifies other incidents of a *Terry* search, such as a "patdown" of the driver and a brief search of the car. *Id.* at 118, 119 S.Ct. 484. Similarly, in *Brignoni–Ponce* the Court stated: "[W]hen an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." 422 U.S. at 881, 95 S.Ct. 2574.

■ There is no inconsistency between these two lines of cases. While either probable cause or reasonable suspicion is sufficient to justify a traffic stop, only the lesser requirement of reasonable suspicion is necessary. We decline Callarman's request to overturn our decision in *Botero–Ospina*, and we rely on the legal test it articulated: "Our sole inquiry [in traffic stop cases] is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." 71 F.3d at 787 (quoting *Prouse*, 440 U.S. at 661, 99 S.Ct. 1391).

## B. The Alleged Traffic Violations

■ In applying this standard, we review the district court's factual findings for clear error, viewing the evidence in a light most favorable to the government and considering the totality of the circumstances. *United States v. Gutierrez–Daniez*, 131 F.3d 939, 940–41 (10th Cir.1997). We review de novo whether those facts provided sufficient justification for a detention. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911

(1996); *United States v. Shareef,* 100 F.3d 1491, 1499 (10th Cir.1996).

■ Officer Voigt asserts that he had reasonable suspicion to stop the vehicle for violating two separate regulations: (1) driving with a cracked windshield; and (2) failing to signal while turning. Kansas law provides: "No person shall drive any motor vehicle with a damaged front windshield or side or rear windows which substantially obstructs the driver's clear view of the highway or any intersecting highway." Kan. Stat. Ann. § 8–1741(b). Streeter's windshield had a crack about 12 inches across and 6 inches high, large enough that Officer Voigt could view it from behind the car. This gave Officer Voigt reasonable articulable suspicion—"a particularized and objective basis"—to believe that the crack substantially obstructed Streeter's view of the street. *Cortez,* 449 U.S. at 417–18, 101 S.Ct. 690. It is irrelevant whether the observed crack was, in fact, large enough to constitute a violation of the law. *United States v. Cashman,* 216 F.3d 582, 587 (7th Cir.2000) (holding that a cracked windshield provided probable cause for a stop even if the crack was not actually large enough to violate the law). The traffic stop was therefore justified, and the district court did not err in denying Callarman's motion to suppress.

Because we find that Officer Voigt had reasonable suspicion that Streeter violated one regulation, we need not address Voigt's second justification—Streeter's failure to signal when turning from a private parking lot onto a public highway.

## III. Conclusion

Traffic stops may properly be based on reasonable articulable suspicion rather than probable cause. The cracked windshield gave Officer Voigt a reasonable suspicion to believe that Streeter had broken

the law. The district court's denial of Callarman's motion to suppress is therefore AFFIRMED.