F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HENRY LAWRENCE BORREGO, JR.,

    Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JORGE MARTELL, also known as
George Carter,

    Defendant-Appellant.

No. 02-6153

(D.C. No. CR-01-91-T)
(W.D. Oklahoma)

No. 02-6165

(D.C. No. CR-01-91-T)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges

Defendants-appellants Henry Borrego and Jorge Martell appeal their convictions

of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

On July 3, 2000, Borrego was driving a tractor-trailer with an empty flatbed trailer on Interstate 35 in Oklahoma City. Martell was a passenger in the tractor-trailer. Police Officer Daimon Alexander believed the tractor-trailer was following another vehicle too closely. Officer Alexander followed the tractor-trailer and witnessed additional traffic infractions, including changing lanes without signaling and slowing to a speed that impeded the flow of traffic in the "inside" or "fast" lane of the highway. Officer Alexander stopped the tractor-trailer, and a significant amount of cocaine was found in the cabin of the tractor-trailer during a consensual search. Borrego and Martell were indicted for possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute. Their motions to suppress the evidence discovered during the consensual search and to dismiss the charges against them were denied. Borrego and Martell entered pleas of guilty to the conspiracy charges under conditional plea agreements.

## II.

*Fourth Amendment Violation (Borrego and Martell)*

Borrego and Martell contend all evidence seized during the traffic stop should have been suppressed because Officer Alexander violated their Fourth Amendment

rights.[1]  The Fourth Amendment protects the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S.

Const. amend. IV.  A traffic stop has been described repeatedly as a "seizure" within the

meaning of the Fourth Amendment and, therefore, its protections fully apply to

investigatory stops of persons or vehicles that are suspected of violating the law.  See

United States v. Arvizu, 534 U.S. 266, 273 (2002).  The legality of a traffic stop is

measured by considering whether a stop was justified at its inception and, if so, whether

the subsequent investigation was reasonably related in scope to the circumstances that

justified the decision to seize the vehicle.  See United States v. Hunnicutt, 135 F.3d 1345,

1348 (10th Cir. 1998) (analogizing traffic stops to investigative detentions and stating the

framework set forth in Terry v. Ohio, 392 U.S. 1, 20 (1968), is the yardstick for

reasonableness).  On appeal, Borrego and Martell challenge only the district court's

conclusion that the stop was justified at its inception.

   Conclusive proof of criminal activity is not a necessary prerequisite to a lawful

stop.  See Hunnicutt, 135 F.3d at 1348.  Rather, a traffic stop is lawful if the officer has

---

[1]  We presume, in light of the government's failure to argue to the contrary, that Martell has standing to raise a Fourth Amendment claim.  See United States v. DeLuca, 269 F.3d 1128, 1131-32 (10th Cir. 2001) (recognizing passenger lacks the requisite possessory interest to challenge a search of the vehicle, but stating passenger may nonetheless contest the lawfulness of his detention and seek to suppress evidence obtained as a result of his illegal detention); United States v. Dewitt, 946 F.2d 1497, 1499-1500 (10th Cir. 1991) (finding government's failure to raise the standing argument before the district court operated as a waiver).

reasonable suspicion to believe that criminal activity "may be afoot." Arvizu, 534 U.S. at 273. This court has described the reasonable suspicion standard as a particularized and objective basis for suspecting the person stopped has been or is engaged in criminal activity. See, e.g., United States v. Callarman, 273 F.3d 1284, 1286 (10th Cir. 2001). When making the reasonable suspicion inquiry, we consider the totality of the circumstances to determine whether there is a particularized and objective basis for suspecting legal wrongdoing. See Arvizu, 534 U.S. at 273.

Applying this standard, we have held that an officer's observation of a motorist's failure to follow "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction permits a seizure under the Fourth Amendment. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). See Callarman, 273 F.3d at 1287 (holding a visible windshield crack gave officer a particularized and objective basis to conclude a violation was occurring); United States v. Rivera, 867 F.2d 1261, 1263 (10th Cir. 1989) (stating officer's observation of tailgating justified stopping the driver). Even if it is determined upon investigation that the observed act is not a violation of the law, the stop is constitutionally permissible as long as the officer had objective, reasonable suspicion to believe a crime was occurring. See Callarman, 273 F.3d at 1287.

After hearing witness testimony, the court found (1) Officer Alexander twice observed the tractor-trailer change lanes without a prior signal in violation of 47 Okla.

Stat. Ann. § 11-309; (2) Officer Alexander observed the tractor-trailer follow another vehicle too closely in violation of 47 Okla. Stat. Ann. § 11-310; and (3) Officer Alexander observed the tractor-trailer being driven at a speed that impeded the flow of traffic in violation of 47 Okla. Stat. Ann. § 11-804. The district court determined these observations provided Officer Alexander with a basis for a reasonable belief that the driver had committed or was committing at least four violations of Oklahoma traffic laws.

On appeal, Borrego and Martell attempt to characterize Officer Alexander's traffic stop as an impermissible roving patrol because Officer Alexander was a member of the Central Oklahoma Metro Interdiction Team, referred to as COMIT. They rely upon City of Indianapolis v. Edmond, 531 U.S. 32 (2000), which held that vehicle checkpoints with the primary intention of drug interdiction violate the Fourth Amendment. Edmond does not preclude a specialized task force from enforcing, even vigorously, the laws of the jurisdiction served. Edmond only prohibits checkpoints designed to stop vehicles without any level of suspicion for the sole purpose of "uncover[ing] evidence of ordinary criminal wrongdoing." Id. at 41-42. Officer Alexander stopped the tractor-trailer based on his observations of violations of traffic laws. See Hunnicutt, 135 F.3d at 1348 (noting Fourth Amendment is not violated when the government shows the officer has reasonable, articulable suspicion that a traffic violation has occurred or is occurring and that this does not require proof of actual violation).

5

*Void for vagueness (Borrego)*

Borrego argues the Oklahoma traffic laws upon which Officer Alexander relied to justify the seizure are void for vagueness. "When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution." United States v. Saffo, 227 F.3d 1260, 1270 (10th Cir. 2000). A criminal defendant cannot successfully raise the void for vagueness argument when he has engaged in conduct clearly proscribed by the challenged statute. See United States v. Corrow, 119 F.3d 796, 803 (10th Cir. 1997).

Borrego alleges "it is a violation of the Fourth Amendment for an officer, who is part of a program of drug interdiction, to use vaguely written and subjectively determined minor traffic violations to seek to legitimize what would otherwise be an unlawful roving checkpoint pursued primarily for drug interdiction purposes." Aplt. Br. at 14-15. Borrego cites no cases in support of his assertions. Nor does he attempt to challenge the district court's conclusion that the statutes "are sufficiently precise and clear to enable a reasonable person to understand the prohibited conduct." Dist. Ct. Op. at 7. See Kolender v. Lawson, 461 U.S. 352, 357 (1983).

*Equal protection (Martell)*

Martell contends the district court erred in finding he failed to make a prima facie

6

showing of an equal protection violation based on Officer Alexander's selective enforcement of traffic laws. Martell offered the expert testimony of Dr. James Horrell, an associate professor of Business Administration at the University of Oklahoma, who performed a statistical analysis of the daily reports prepared by Officer Alexander over a four-month period of time. The analysis indicated that 25% of the driving population in the Oklahoma city area was considered "non-white," but 37% of the vehicles Officer Alexander stopped were driven by "non-white" persons. The district court noted that "Dr. Horrell declined to opine that the statistics reflect 'selectivity' in stops and searches, but testified that he believed the results reflect a lack of 'evenhandedness.'" Dist. Ct. Op. at 14. The court found that "[a]lthough Dr. Horrell's analysis reflects some disparity in the number of non-white traffic stops and searches, the court does not find the statistical evidence sufficient to establish discriminatory impact." Id. The court concluded Martell had failed to establish a prima facie case of discrimination which would violate the Equal Protection Clause and, even if he did, the government's evidence established Officer Alexander's reasons for stopping the vehicle were not based upon race.

We review a district court's decision denying a motion to dismiss a criminal indictment under an abuse of discretion standard. See United States v. Furman, 31 F.3d 1034, 1037 (10th Cir. 1994). Thus, a district court's judgment will remain undisturbed unless there is "a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." United States v.

7

<u>Mitchell</u>, 113 F.3d 1528, 1531 (10th Cir. 1997).

As a matter of law, long-standing equal protection jurisprudence has recognized that some measure of selectivity in the law enforcement arena is constitutionally permissible. <u>See</u> <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962). Moreover, while helpful, purely statistical evidence is rarely sufficient to support an equal protection claim. <u>See</u> <u>McClesky v. Kemp</u>, 481 U.S. 279, 293 n.12 (1987).

The district court did not abuse its discretion in determining that Martell failed to present a prima facie case of selective enforcement of traffic laws. Although Officer Alexander indicated that he did not stop every vehicle for every violation that occurred, there is no evidence that he used race or any other impermissible consideration as a factor in deciding to stop a particular vehicle. Officer Alexander testified that he did not know the race of Martell or Borrego when he stopped the tractor-trailer.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge