**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 6 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

MAURO ADRIAN GARCIA,

        Defendant-Appellant.

No. 03-5076

(D.C. No. 02-CR-148-P)

(N.D. Oklahoma)

**ORDER AND JUDGMENT** *

Before **HENRY** , **BALDOCK** , and **HARTZ** , Circuit Judges.

      Defendant Mauro Adrian Garcia was stopped by Oklahoma State Trooper

Gene Hise on November 6, 2002, for failure to signal when changing lanes. After

the trooper questioned Defendant and issued a "courtesy warning," Defendant

gave the trooper consent to search his car. Hise ultimately discovered

approximately 26 kilograms of cocaine. Defendant moved the district court to

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

suppress the cocaine, arguing that the search of his car violated the Fourth Amendment. After the district court denied his motion, Defendant entered a conditional guilty plea to possessing with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(ii). As part of his plea, Defendant reserved the right to appeal the district court's denial of his motion to suppress. On appeal Defendant argues: (1) the traffic stop itself violated the Fourth Amendment because it was pretextual, (2) Hise asked questions that impermissibly exceeded the scope of the traffic stop, and (3) Defendant's consent to search his car was not freely given. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

"In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous." United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995) (en banc). The final determination whether a warrantless search was reasonable under the Fourth Amendment is a question of law to be reviewed de novo. Id. "We view the evidence on appeal in the light most favorable to the government." Id.

## I. FACTS

The facts as found by the district court and supported by the record are as follows: At 2:47 p.m. on November 6, 2002, Defendant was stopped by Trooper

Hise near the entrance to a toll booth on Interstate 44. Defendant's vehicle, a 1996 Monte Carlo, had been traveling in the inside lane of traffic when "[t]he vehicle cut across the outside lane of traffic and overshot the marked lane for exiting the turnpike all without the driver signaling his intent to change lanes or exit the turnpike." Supp. App. at 93. The entire detention was captured on videotape by a camera mounted inside Hise's car.

Hise asked Defendant to step out of his vehicle and produce his driver's license. Defendant handed him the license. Defendant incorrectly told Trooper Hise that the vehicle was a 1994 model. Defendant sat in the patrol car as Hise filled out paperwork. Hise informed Defendant that he was only going to issue him a "courtesy warning," rather than give him a ticket. Defendant appeared extremely nervous. He appeared to have an elevated heart rate (Hise testified that he could see the throbbing carotid artery in Defendant's neck), his hands were shaking, and he avoided eye contact. While completing the paperwork, Hise asked Defendant his weight, his address, where he was going, where he worked, what he did for a living, how long he had owned his car, and where he had bought it. At approximately 2:55 p.m. Hise called in a license check to verify the information on Defendant's driver's license.

Hise then asked Defendant to produce the vehicle registration. Defendant responded that the registration was in the Monte Carlo, but when the two went to

the vehicle, he was able to produce only a bill of sale showing that the vehicle had been transferred to "Adrian Garcia" in August—approximately three months earlier. Hise also observed at this time that the Monte Carlo displayed a temporary Illinois registration.

At 2:59 p.m. Hise received information from the dispatcher regarding the license he had called in. He then left the patrol car to look into the driver's window of the Monte Carlo, promptly returned to his car, and again informed Defendant that he was issuing him only a courtesy warning. At 3:03 p.m., sixteen minutes after the stop, Hise returned Defendant's paperwork and told him that he was done and to "have a nice day." Supp. App. at 64. Defendant left the patrol car and began to walk back to the Monte Carlo.

At that point Hise got out of the patrol car and asked Defendant if he "had a minute where I could visit with him." Supp. App. at 33. Defendant agreed. Hise told Defendant that he appeared extremely nervous and asked him whether everything was okay. He then asked Defendant whether he had any guns, marijuana, or cocaine in his car. Defendant said that he did not. Hise also questioned Defendant about his having put more than 12,000 miles on the Monte Carlo since he had purchased it in August.

At 3:06 p.m. Hise asked for permission to search the Monte Carlo, and Defendant consented. Hise walked his drug-sniffing dog, which had been in the

-4-

back of his patrol car, around the Monte Carlo. The dog alerted to drugs, and Hise discovered 26 bundles of cocaine in the car.

## II. DISCUSSION

Defendant challenges the stop, questioning, and subsequent search of his car on several grounds: (1) that the stop was merely pretextual; (2) that Hise's questions exceeded the scope of the traffic stop; and (3) that his consent to search was invalid because it was the product of the prior excessive questioning, which left him with "the impression he was not free to go." Aplt. Br. at 18.

### A. Initial Stop

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation . . . ." Botero-Ospina, 71 F.3d at 787. Whether the stop is routine and the subjective motivations of the police officer are both irrelevant. Id.

Defendant did not signal when he changed lanes, thereby violating 47 Okla. Stat. § 11-309. The stop was therefore reasonable under the Fourth Amendment. Defendant's first argument is without merit.

### B. Scope of Questioning

Defendant next argues that Hise's questioning exceeded the scope of the encounter. But "an officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans

and vehicle ownership, and issue a citation." United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001). Implicit in the authority to ask these questions is the authority to follow up on them when the answers are suspicious. For example, although Defendant's driver's license indicated that he lived in Dallas, he told Hise that he was on his way to Chicago, where he claimed to work. Presented with this peculiar answer (and noting that Defendant appeared extremely nervous even after Hise told him he was only issuing a courtesy warning), Hise properly asked several additional questions to verify the truthfulness of Defendant's statements about his travel plans and confirm his identity. We agree with the district court that, in context, the questions were permissible.

Similarly, Defendant was unable to provide Hise with vehicle registration, title, or a permanent tag, and Defendant also misidentified the year of his car. In addition, the bill of sale that Defendant provided had a name on it somewhat different from his own. Hise asked him questions to ensure that he was indeed the owner and had authority to operate the car. For substantially the reasons set forth in the district court's order, we agree that Hise's questioning of Defendant was, under the totality of the circumstances, permissible because Hise "had the authority to ask sufficient questions to verify the Defendant's ownership of, and authority to operate, the vehicle." Supp. App. at 99.

## C. Consent

After Hise returned to Defendant his documents and indicated that the traffic stop was over and Defendant was free to go, he asked Defendant whether he "had a minute where I could visit with him." Supp. App. at 33. The district court found that from this point on, the encounter was purely consensual. Defendant had all his documents in his possession, and the record indicates no coercion. Additionally, during the subsequent search of the Monte Carlo, Defendant did not object or attempt to withdraw his consent. The district court did not clearly err in finding that consent to search the vehicle was voluntary. Thus, the search did not violate the Fourth Amendment.

## III. CONCLUSION

We AFFIRM the judgment below.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge