**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JUN 8 2004**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MICHAEL JEROME BRYANT,

      Defendant - Appellant.

No. 03-4152
(D.C. No. 2:00-CR-492-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

Defendant Michael Jerome Bryant was convicted of two counts of

possessing a controlled substance with intent to distribute in violation of 21

U.S.C. § 841(a). On appeal, he contends that police violated his Fourth

Amendment rights when he was stopped for driving a vehicle with excessively

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

tinted windows, and that the drugs subsequently found in the vehicle therefore should have been suppressed. We AFFIRM.

## BACKGROUND

Officer Paul Mangelson of the Utah Highway Patrol was on traffic duty on October 12, 2000, when he noticed a truck or sport utility vehicle drive by with "extremely dark windows." Defendant Bryant was the driver of that vehicle.

At the time, Utah law generally prohibited operation of a motor vehicle with windows that allowed less than a certain percentage of light to pass through. See Utah Stat. § 41-6-149(1) (2000). More specifically, windshields were required to allow at least 70 percent light transmittance, front side windows had to allow at least 43 percent light transmittance, and any other window had to allow at least 28 percent light transmittance. Id.

Mangelson testified that, although Bryant's windshield did not seem to be excessively tinted, "all of the other windows appeared to be too dark." After initially observing the vehicle pass by, Mangelson followed it, drove beside it to get a better view of its windows, and again concluded that the windows were too dark. He testified that he believed that "there was no question about the back windows, and the front windows were borderline. I knew they would be awful close." Mangelson pulled the vehicle over.

Mangelson approached the passenger side of the vehicle, and its occupants rolled the window down. Mangelson testified that "the very first thing I noticed was a very strong odor of marijuana that emitted from that vehicle." He then asked for permission to search the vehicle, and the passengers agreed. That search uncovered particles of a leafy green material that Mangelson correctly suspected was marijuana. Police later found about 3.6 kilograms of heroin and 2 kilograms of cocaine hidden in the vehicle's spare tire.

Mangelson also testified that, at some point after stopping the vehicle, he had come to the conclusion that its rear side windows were "obviously too dark" but that its front side windows were "probably okay." Mangelson tested the windows, and reported that the front side windows allowed 65 percent light transmittance (and thus did not violate Utah law), but that the rear side windows allowed only 18 percent light transmittance (falling below Utah's general 28 percent threshold for such windows).

Bryant was ultimately charged with two counts of possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a). He filed a motion to suppress the drugs found in the vehicle, and the district court denied that motion. He was convicted on both counts.

**DISCUSSION**

In reviewing the denial of a motion to suppress, the ultimate determination of reasonableness is a question of law we review de novo. United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995) (en banc). We view the evidence on appeal in the light most favorable to the government, accepting the district court's factual findings unless clearly erroneous. Id.

We analyze the reasonableness of a traffic stop, like an investigative detention, under the principles outlined in Terry v. Ohio, 392 U.S. 1 (1968). Botero-Ospina, 71 F.3d at 786. We ask first whether the stop was proper at its inception, and second whether the scope of the detention was reasonably related to the circumstances justifying it. Id. In the instant case, Bryant's Fourth Amendment challenge is limited to the lawfulness of the initial traffic stop. He has not argued that his continued detention exceeded the stop's legitimate scope.

A traffic stop is valid under the Fourth Amendment so long as the officer either has observed a traffic or equipment violation or has reasonable articulable suspicion that such a violation has occurred or is occurring. See id. at 787; United States v. Callarman, 273 F.3d 1284, 1287 (10th Cir. 2001). "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." Botero-Ospina, 71 F.3d at 787

(quotation marks omitted). This is purely an objective assessment; the officer's subjective motivations for the stop are irrelevant. Id.

At the time of the stop, Utah law generally prohibited operation of a motor vehicle with a windshield that allowed less than 70 percent light transmittance, a front side window that allowed less than 43 percent transmittance, or any other window that allowed less than 28 percent transmittance. See Utah Stat. § 41-6-149(1)(a)-(c) (2000).[1] Under an exception to that rule, a window was also deemed to comply with state law if it "meets the federal statutes and regulations for motor vehicle window composition, covering, light transmittance, and treatment." See id. at § 41-6-149(3). We hold that the traffic stop in this case was justified by reasonable suspicion that Bryant was driving a vehicle with windows that were excessively tinted in violation of Utah law.

We turn first to Bryant's rear side windows. The primary issue we face on appeal is whether those windows were within the scope of Utah Stat. § 41-6-149(3)'s safe harbor for windows that meet federal light transmittance standards.

Federal law generally prohibits the initial sale or the manufacture for sale of motor vehicles that fail to comply with a multitude of federal safety standards. See 49 U.S.C. § 30112(a), (b). Among those regulations is 49 C.F.R. § 571.205

---

[1] Utah later eliminated its tinting restriction for windows other than the windshield and front side windows. See Utah Stat. Ann. § 41-6-149(1) (2003).

("Standard No. 205"), which governs glazing materials. At all times relevant to the instant case, with exceptions not at issue here, that regulation required that motor vehicle glazing comply with the industry standards detailed in the American National Standard "Safety Code for Safety Glazing Materials for Glazing Motor Vehicles Operating on Land Highways," ANSI/SAE Z-26.1-1977, as supplemented in 1980. 49 C.F.R. § 571.205, S5.1 (2000).

For trucks and multipurpose passenger vehicles, those standards demanded (among other things) 70 percent light transmittance for any windows that are requisite for driving visibility. See 63 Fed. Reg. 37820, 37820-21 (July 14, 1998) (describing federal light transmittance requirements and withdrawing a proposal to change them). The district court held, and the parties agree, that neither this light transmittance requirement nor any other federal light transmittance standard applied to the rear side windows of the vehicle Bryant was driving. We assume for purposes of this opinion that this holding is correct.

The parties' dispute turns on whether, under Utah Stat. § 41-6-149(3), a window that is not regulated by federal law with respect to light transmittance "meets the federal statutes and regulations for motor vehicle window ... light transmittance." If so, that exception shielded Bryant from liability under Utah Stat. § 41-6-149(1) as to his rear side windows. If not, then Utah's 28 percent

transmittance requirement applied to those windows, and Bryant was driving in violation of state tinting restrictions.

Bryant asserts that so long as his windows did not <u>violate</u> any federal standards, he was not subject to criminal liability under Utah law. In contrast, the government argues that a window can "meet" federal light transmittance standards for purposes of Utah Stat. § 41-6-149(3) only if federal law directly speaks to light transmittance with respect to that type of window.

The district court correctly endorsed the government's position. The term "meets" presupposes that there is some applicable federal standard against which to measure the window in question. In contrast, when federal law does not contain <u>any</u> light transmittance standards for a certain class of windows, then § 41-6-149(3)'s exception does not apply. Indeed, it would be inaccurate to say that one meets applicable federal regulations when, in truth, there are no applicable federal regulations to speak of. Thus, when federal standards are silent as to light transmittance, as here, Utah's general light transmittance rules govern.

Officer Mangelson observed Bryant driving a vehicle with rear side windows tinted to the point that they allowed only 18 percent light transmittance, whereas Utah law required that such windows allow 28 percent transmittance. After Mangelson witnessed this illegal activity, the Fourth Amendment allowed him to make a traffic stop. <u>Cf.</u> <u>Botero-Ospina</u>, 71 F.3d at 787.

Additionally, although the district court did not reach this issue, we conclude that the traffic stop was further justified by reasonable articulable suspicion at the time of the stop that Bryant's front side windows (which later tested at 65 percent light transmittance) violated Utah's requirement for such windows (at least 43 percent light transmittance).[2]  Mangelson, after driving alongside Bryant's vehicle, testified that the front side windows appeared to be "too dark," and that he had believed that the light transmittance test would be "awful close."  He also testified that Utah prohibited front side windows allowing less than 43 percent light transmittance.  We can infer that Mangelson's statement that the front side windows appeared "too dark" meant that they appeared too dark by reference to Utah's 43 percent transmittance standard.

Viewing the evidence in the light most favorable to the government, this testimony supports a conclusion that, as the circumstances appeared to Mangelson at the time of the stop, it was objectively reasonable to suspect that Bryant's front side windows were tinted so that they did not allow 43 percent light transmittance.  Although it ultimately turned out that those windows complied with Utah law, "the government need not show a violation actually occurred to justify an initial traffic stop."  United States v. Hunnicutt, 135 F.3d 1345, 1348

---

[2]  There is no question that Bryant's front side windows were regulated by federal law and that those windows did not meet federal standards.  Thus, Utah Stat. § 41-6-149(3)'s exception clearly does not apply as to those windows.

(10th Cir. 1998); see also Callarman, 273 F.3d at 1287 ("[Officers had] reasonable articulable suspicion – 'a particularized and objective basis' – to believe that [a] crack substantially obstructed [the driver's] view of the street. It is irrelevant whether the observed crack was, in fact, large enough to constitute a violation of the law.") (citation omitted); United States v. Bradley, 219 F.Supp. 2d. 1150, 1154 (D. Or. 2002) ("It was reasonable for [an officer] to stop defendant based on his suspicion that the car windows were tinted too darkly ... even if that turned out not to be the case.").

In sum, there was reasonable articulable suspicion at the time of the traffic stop that Bryant's rear and front side windows were excessively tinted in violation of Utah law. Indeed, with respect to Bryant's rear side windows, that suspicion ultimately turned out to be correct. Accordingly, the stop was reasonable under the Fourth Amendment and the district court properly declined to suppress the drugs that officers found as a result of the stop. We AFFIRM.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge