2005 OK CIV APP 47

Ronald B. TRIPP, Jr., Plaintiff/Appellee,

v.

STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.

No. 101,803.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 1, 2005.

J. Robert Blakeburn, Oklahoma City, OK, for Appellant.

Dave Stockwell and John C. Mackey, Jr., Norman, OK, for Appellee.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Defendant/Appellant State of Oklahoma, ex rel. Department of Public Safety (DPS), seeks review of the trial court's order setting aside DPS' order revoking the driver's license of Plaintiff/Appellee Ronald B. Tripp, Jr. (Plaintiff) for lack of a valid stop. In this appeal, DPS asserts the trial court erred as a matter of law when it: construed 47 O.S. §§ 11–309 and 11–604 in conflict; held the arresting officer did not have reasonable grounds to stop Plaintiff; and, for lack of a valid stop and arrest, set aside the order revoking Plaintiff's driver's license.

¶ 2 The arresting officer testified that she observed the vehicle operated by Plaintiff leave an establishment serving alcoholic beverages at about 2:00 o'clock in the morning, but observed no erratic or illegal driving as Plaintiff drove away. The officer then observed Plaintiff's vehicle to safely change lanes (there being no other traffic in the area), but without signaling the lane change. The officer stopped Plaintiff's vehicle, and upon contact with Plaintiff, allegedly observed indicia of Plaintiff's intoxication. The officer subsequently placed Plaintiff under arrest for operation of a motor vehicle while under the influence of an intoxicating substance, and DPS issued an order revoking Plaintiff's driver's license.

¶ 3 Upon administrative review, a hearing officer affirmed the revocation. Plaintiff petitioned for review in the trial court, and upon consideration of the testimony and evidence, the trial court set aside the revocation. DPS filed a motion to reconsider, which the trial court denied, holding:

> The sole issue before this court is the legality of the initial law enforcement contact with the plaintiff. Plaintiff stipulates to all other issues being determined.
>
> On January 27, 2004, the date of the arrest precipitating the instant case, the arresting officer observed Plaintiff drive from a shopping center, [where] one of the businesses is a restaurant that serves alcoholic beverages, at approximately 2:00 a.m. The officer observed no erratic or illegal behavior as the vehicle left the parking lot and drove away. At about 1500 N.W. 36th Avenue in Norman, Oklahoma, the officer then observed the plaintiff to safely change lanes from the marked left lane into the right lane without other traffic in the area. Because the plaintiff did not signal his intention to change lanes, the officer believed the plaintiff had violated a traffic ordinance. The failure to signal was the sole reason the officer stopped the plaintiff to make initial contact with him.

The court finds 47 O.S. § 11–604 and the concurrent city ordinance control a driver's responsibilities when moving right or left in the roadway. Neither requires a driver to signal when moving right or left in the roadway, but only upon turning. The court finds § 11–309 is in conflict with § 11–604 and the city ordinance. Because the plaintiff may have relied upon the less restrictive provisions, the officer did not have the requisite reasonable suspicion of illegal activity to impede a driver's progress. Therefore, the initial contact with plaintiff was not justified and the revocation/suspension of Plaintiff's driver's license should be set aside.

DPS appeals.[1]

¶ 4 DPS first asserts that, contrary to the trial court's conclusion, § 11–309 can be read in harmony with § 11–604, and that § 11–604, being the more specific statute, controls. In its second proposition, DPS asserts that, even if she was wrong in her construction of § 11–604, the arresting officer reasonably believed she had witnessed the commission of a traffic offense by Plaintiff as to justify the initial stop.

■ ¶ 5 Oklahoma law requires a valid arrest as necessary to invoke a police officer's right under statute to request submission to chemical tests for blood alcohol. 47 O.S. § 751(A); *Appeal of Dungan*, 1984 OK 21, 681 P.2d 750; *Smith v. State, ex rel. Dept. of Public Safety*, 1984 OK 16, 680 P.2d 365; *White v. Oklahoma Dept. of Public Safety*, 1980 OK 21, 606 P.2d 1131. A valid arrest requires a valid stop, and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. U.S.*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). So:

An officer may stop a moving vehicle not only when he directly observes a violation of the law, but also when specific articulable facts indicate probable cause to believe a violation of the law is present. If, after properly stopping the vehicle, the officer observes a misdemeanor, the subsequent arrest is lawful.

*Smith*, 1984 OK 16, ¶ 3, 680 P.2d at 368; *White*, 1980 OK 21, ¶ 9, 606 P.2d at 1132.

■ ¶ 6 In the present case, it is undisputed that the arresting officer never observed Plaintiff's operation of his vehicle other than safely, and the only reason the arresting officer stopped Plaintiff was because Plaintiff failed to signal his intention to change lanes, an act which the arresting officer believed to constitute a violation of Oklahoma law or local ordinance. Whether Plaintiff's failure to signal his intent to change lanes violated Oklahoma law, or whether the arresting officer reasonably believed she had witnessed a violation of Oklahoma law, thus determines the validity of the stop and subsequent arrest, because even if the observed act did not violate the law, the stop was permissible so long as the officer had an objective, reasonable suspicion to believe a crime was occurring. *See, United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir.(Kan.) 2001)[2];

---

1. We here note that, in his answer brief, Appellee reurges his pre-assignment motion to dismiss, arguing Appellant did not timely commence the instant appeal after the trial court announced its decision from the bench and memorialized its decision by minute order. By order filed April 11, 2005, however, the Supreme Court denied Appellee's pre-assignment motion to dismiss, holding the "appeal may proceed" because the minute order was not prepared in accord with statute, and the time to appeal did not begin to run until a file-stamped copy of the final order was mailed or delivered to the parties. 12 O.S. §§ 696.2, 696.3, 990A. We are bound by the Supreme Court's pre-assignment ruling. *LCR, Inc. v. Linwood Properties*, 1996 OK 73, ¶¶ 4–6, 918 P.2d 1388, 1391–1392.

2. "Officer Voigt asserts that he had reasonable suspicion to stop the vehicle for violating two separate regulations: (1) driving with a cracked windshield; and (2) failing to signal while turning. Kansas law provides: 'No person shall drive any motor vehicle with a damaged front windshield or side or rear windows which substantially obstructs the driver's clear view of the highway or any intersecting highway.' Streeter's windshield had a crack about 12 inches across and 6 inches high, large enough that Officer Voigt could view it from behind the car. This gave Officer Voigt reasonable articulable suspicion—'a particularized and objective basis'—to believe that the crack substantially obstructed Streeter's view of the street. It is irrelevant whether the observed crack was, in fact, large enough to constitute a violation of the law. The traffic stop was therefore justified, and the district court did not err in denying Callarman's motion to suppress." (Citations omitted.)

*United States v. Cashman*, 216 F.3d 582, 587 (7th Cir.(Wis.) 2000).[3]

¶ 7 The trial court reasoned that 47 O.S. § 11–604 did not require a driver to signal the intent to change lanes. So, to the extent § 11–604 conflicted with 47 O.S. § 11–309 and the Norman Code of Ordinances,[4] the trial court held Plaintiff's failure to signal his intent to change lanes did not constitute a violation of law committed in the arresting officer's presence as to justify her stop and subsequent arrest of Plaintiff.

¶ 8 Section 11–604, entitled "Turning movements and required signals—Passing person attempting a left turn," provides in pertinent part:

A. No person shall turn a vehicle at an intersection, a public or private road, or a driveway, unless the vehicle is in proper position upon the roadway as required in Section 11–601 of this title, or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal as provided in subsection B of this section, in the event any other traffic may be affected by such movement.

B. A signal of intention to turn right or left as required by law shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

47 O.S.2001 § 11–604(A), (B). Section 11–309, entitled "Driving on roadways laned for traffic," provides:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following requirements in addition to all others consistent herewith shall apply.

1. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his intention to change lanes....

47 O.S. Supp.2002 § 11–309. Norman city ordinances require only the exercise of "reasonable safety" when changing lanes. Norman Code of Ordinances, Art. V, § 20–538.[5]

¶ 9 We are bound by the plain language of a statute. *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20; *Toxic Waste Impact Group, Inc. v. Leavitt*, 1988 OK 20, ¶ 10, 755 P.2d 626, 630. Where two statutes, one specific and one general, deal with the same subject matter, the specific statute controls, with both the general and specific provision given "harmonious" effect. *See, e.g., Samson Hydrocarbons Co. v. Oklahoma Tax Com'n*, 1998 OK 82, ¶ 15, 976 P.2d 532, 537–538; *City of Tulsa v. Smittle*, 1985 OK 37, ¶ 12, 702 P.2d 367, 370; *Beidleman v. Belford*, 1974 OK 72, ¶ 17, 525 P.2d 649, 651; *In the Matter of the Guardianship of Campbell*, 1966 OK 99, ¶ 13, 450 P.2d 203, 205. Statutory construction presents a question of law, and we review the trial court's determination de novo, without deference to the trial court's conclusion. *See, e.g., Duncan v. Oklahoma Dept. of Corrections*, 2004 OK 58, ¶ 3, 95 P.3d 1076, 1078.

¶ 10 The plain language of § 11–604(A) and (B) requires the exercise of "reasonable safety" and "a signal of intention to turn right or left," so that "[n]o person shall so turn any vehicle without giving an appropriate signal ... in the event any other traffic may be affected by such movement." "In

---

**3.** "The propriety of the traffic stop does not depend ... on whether Cashman was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for Trooper Spetz to believe that the windshield was cracked to an impermissible degree."

**4.** Although the trial court in its order did not specify which section of the Norman Code of

Ordinances conflicted, Article V, § 20–538 of the Norman Code provides:

Turning or changing lanes: Other than intersections.

No person shall operate a vehicle so as to change lanes, turn from a direct course, or move to the right or left of a roadway, unless and until such movement can be made with reasonable safety.

**5.** See, footnote 1, supra.

addition" to any other consistent provisions of the Oklahoma Highway Safety Code, Rules of the Road, § 11–309(1) requires the exercise of "safety" and a "signal ... of [the] intention to change lanes." Giving effect to the "in addition" language of § 11–309(1), we construe § 11–604(A), (B) and 11–309(1) to require a signal of the intention *either* to turn right or left, *or* to change lanes, and failure to signal a lane change constitutes a violation of § 11–309. Indeed, the Tenth Circuit Court of Appeals has twice held changing lanes without a signal constitutes a violation of § 11–309, and where an officer observes such a violation, a stop of the driver is reasonable under the Fourth Amendment to the United States Constitution. *See, U.S. v. Garcia,* 87 Fed. Appx. 707, 709 (10th Cir.(Okla.) 2004) (Slip Op.) [6]; *U.S. v. Borrego,* 66 Fed. Appx. 797, 799–800 (10th Cir.(Okla.) 2003) (Slip Op.).[7]

¶ 11 To construe § 11–309(1) as bereft of the requirement to signal the intention to change lanes ignores the section's plain language. And, we will not construe the Norman City Ordinance as dispensing with the statutory requirement to signal the intention to change lanes.

¶ 12 To the extent the trial court held § 11–309 did not impose a requirement to signal the intent to change lanes, and on that basis, ruled the arresting officer had no reasonable basis to effect a stop of Plaintiff, we hold the trial court erred in its construction of § 11–309. The order of the trial court is therefore REVERSED, and the cause RE-MANDED for entry of an order affirming DPS' revocation of Plaintiff's driver's license.

HANSEN, J., dissents, and BUETTNER, C.J., concurs.

Officer Alexander twice observed the tractor-trailer change lanes without a prior signal in violation of 47 Okla. Stat. Ann. § 11–309; (2) Officer Alexander observed the tractor-trailer follow another vehicle too closely in violation of 47 Okla. Stat. Ann. § 11–310; and (3) Officer Alexander observed the tractor-trailer being driven at a speed that impeded the flow of traffic in violation of 47 Okla. Stat. Ann. § 11–804. The district court determined these observations provided Officer Alexander with a basis for a reasonable belief that the driver had committed or was committing at least four violations of Oklahoma traffic laws." Held: "Officer Alexander [permissibly] stopped the tractor-trailer based on his observations of violations of traffic laws."

6. "Defendant did not signal when he changed lanes, thereby violating 47 Okla. Stat. § 11–309. The stop was therefore reasonable under the Fourth Amendment. Defendant's first argument is without merit."

7. "[A]n officer's observation of a motorist's failure to follow 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction permits a seizure under the Fourth Amendment. (Citations omitted.) Even if it is determined upon investigation that the observed act is not a violation of the law, the stop is constitutionally permissible as long as the officer had objective, reasonable suspicion to believe a crime was occurring. (Citations omitted.) After hearing witness testimony, the court found (1)