FILED
United States Court of Appeals
Tenth Circuit

February 8, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORGE M. CANO,

Defendant - Appellant.

No. 08-3202
District of Kansas
D.C. No. 5:05-CR-40116-JAR-1

ORDER AND JUDGMENT[*]

Before **TACHA, HOLLOWAY** and **GORSUCH**, Circuit Judges.

Defendant-appellant Jorge Cano was indicted on one count of possession with
intent to distribute approximately 17 kilograms of cocaine in violation of 21 U.S.C. §
841(a)(1). After his motion to suppress evidence seized after a traffic stop was denied by
the district court, he entered into a conditional guilty plea. Mr. Cano was sentenced to
240 months' imprisonment, to be followed by a term of ten years on supervised release,
even though he was also ordered to be deported after completing his term of
imprisonment. He was also ordered to pay a special assessment of $100.00. Mr. Cano
now appeals the district court's ruling on the motion to suppress. This court's jurisdiction

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

is granted by 28 U.S.C. § 1291.

**I**
A

Mr. Cano was the sole passenger in a van driven by his wife. The couple were eastbound on I-70 in Wabaunsee County, Kansas, early on the afternoon of October 18, 2005, when Trooper Andrew Dean passed going west. Trooper Dean noticed an "unusual looking tag," and turned around to get a closer look. When the trooper caught up to the van, he noticed that it had two tags on the back. The permanent tag was properly displayed, and by radio the trooper was informed that it was a valid Kentucky dealer tag, issued to a business called Eagle Auto Sales, which was owned by Mr. Cano.

The second tag, which the trooper said looked like a temporary tag, was mounted on the inside of the back glass of the van. The glass was so darkly tinted that the trooper could not read the temporary tag, even though the stop occurred in the daytime. The tag was also mounted in such a way that the upper brake light partially obscured it. The trooper testified that he could not even determine what state had issued the temporary tag until he had stopped the van and approached it after getting out of his patrol car. He could read the numbers on the tag while parked behind it, except that the last digit was obscured by the brake light.

Trooper Dean testified at the suppression hearing that he thought it was "probably illegal" for a car to display two tags, although he could not say what statute prohibited it. Based on his experience, the trooper said that he thought the presence of two tags likely

meant that one of them was expired or "it could be stolen." (It is unclear if this referred to the tag being stolen, or the vehicle, or both.)

The trooper pulled the van over. After explaining why he had pulled them over and having asked for Ms. Cano's license and the vehicle's registration, the trooper asked them a few questions about their travel. They said they were returning to Kentucky, where their car dealership was located, from Denver, where they had gone to an automobile auction. Ms. Cano's driver's license had expired; Mr. Cano's license was from California. The trooper asked if they lived in California, and one of the them said that they had a home there. The temporary tag displayed in the back glass of the van had expired.

The officer then told the couple to wait in the van while he returned to his patrol car to run a check on the documents. He found that neither had any reported criminal history. Trooper Dean returned to the van after about seven minutes.

Upon returning to the van, the trooper told the couple he was only giving them a warning for displaying an expired temporary tag; he also said that Ms. Cano should get her driver's license renewed and that Mr. Cano should drive the rest of the trip. Trooper Dean then told the couple to "have a good one" and stepped away from the van. The couple got out of the van to switch positions. The trooper then asked Mr. Cano if he could ask a few more questions and mentioned a problem with drugs and guns coming from Denver. He asked if they had drugs or guns in the car and then asked for permission to look. Mr. Cano consented.

The trooper opened the back of the van. After a few seconds looking at the luggage in the back, the trooper noticed some rubber molding that looked as if someone had tampered with it. He opened that interior panel and saw packages which were found to contain cocaine.

B

The district court determined that the initial stop was lawful, contrary to Defendant's argument. Defendant had urged that because the permanent dealer tag had been valid, there had been no violation. The judge determined that the government was correct in arguing that it was a violation of Kansas law to display two tags.

Ruling on issues not raised in this appeal, the district judge further held that the duration of the stop was justified and that Mr. Cano's consent to the search of the van was voluntary.

**II**

The only issue raised on appeal is whether the initial stop of the vehicle was justified. A traffic stop is a seizure within the meaning of the Fourth Amendment and must be supported by at least reasonable suspicion "that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 786-87 (10th Cir. 1995) (en banc). The principles of *Terry v. Ohio*, 392 U.S. 1 (1968), apply to traffic stops. *See id.* at 786. Whether the officer had reasonable suspicion to justify a stop is a question of ultimate reasonableness under the Fourth Amendment, and we review the district court's ruling on the question *de novo*. *Id*. at 785.

In his testimony at the hearing on Mr. Cano's motion to suppress, Trooper Dean may have contradicted himself in response to questions about the reason for his decision to stop the van. At one point, he indicated that he pulled the van over because the presence of two tags led him to suspect that some other criminal activity had occurred. Dealer tags are rather easy to steal, the trooper testified, and a stolen tag may be desired to change the tag on a stolen vehicle, for instance. At other times, Trooper Dean indicated that he believed that it was a violation to display more than one tag and that this by itself was the reason for the stop. We note that these two explanations are not inherently inconsistent because the trooper may have had both thoughts. But we need not be concerned with this possible discrepancy in any event, because the trooper's subjective reason for the stop is not relevant to our analysis. *See United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001).

The issue before us is, instead, whether it was reasonable for the trooper to believe that a violation had occurred: "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *Botero-Ospina*, 71 F.3d at 787 (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)). We conclude that the stop was valid.

Trooper Dean testified that the rear window of the van was so darkly tinted that even in daylight he could not determine what state had issued the temporary tag. He also testified that the temporary tag was positioned so that the last digit in the number was

obscured.  Even after exiting his patrol car and approaching the vehicle he could only partially read the last digit.

Kansas law requires that all license plates and tags be displayed so that they can be read.  The applicable statute provides, in pertinent part:  "Every license plate shall at all times be securely fastened to the vehicle to which it is assigned . . . in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible."  Kan. Stat. Ann. § 8-133.  The temporary tag was in clear violation of this statutory requirement.  This case is thus very similar to *United States v. Ledesma*, 447 F.3d 1307 (10th Cir. 2006).  In that case, the trooper could not see the tag at all because of excessive tinting of the van's back glass, whereas in this case Trooper Dean could, at some point before pulling the van over, see that there was what appeared to be a temporary tag.  But the tag was not "clearly legible" as state law required.  Thus here, as in *Ledesma*, 447 F.3d at 1313, the trooper had observed "a straightforward violation of § 8-133."

Defendant argues that we should overlook this violation because the van did have a dealer tag properly displayed.  But the statute requires that "every" tag be displayed so that it can be read.  We therefore conclude that Defendant's argument must be rejected.  Because we decide this appeal on this basis, we do not reach the legal question whether the Kansas statutes forbid the display of more than one tag (except in specifically described situations) as the district court had held.

The initial stop of the Defendant's van was justified by reasonable suspicion of a

violation of Kansas law.  Because we conclude that the initial stop was justified, we need

not consider Defendant's argument that the alleged taint from an allegedly illegal stop

rendered his consent to search the vehicle involuntary.

The judgment of the district court is

AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge
