2007 OK 56

**Joshua Ray BROWN, Plaintiff,**

v.

**CREEK COUNTY by & through the CREEK COUNTY BOARD OF COUNTY COMMISSIONERS, Michael S. Ward, M.D., and Cindy A. Newell, L.P.N., Defendants.**

No. 103658.

Supreme Court of Oklahoma.

July 3, 2007.

**1074**

Richard D. Marrs and E. Diane Hinkle, Richardson Law Firm Tulsa, Oklahoma, for plaintiff.

Matthew B. Free and Angela L. Smoot, Best & Sharp, Tulsa, Oklahoma, for defendants.

OPALA, J.

¶ 1 The United States District Court for the Northern District of Oklahoma certified the following questions under the authority of the Uniform Certification of Questions of Law Act, 20 O.S.2001 § 1601 *et seq.*[1]

1. "Whether the provisions of the Oklahoma Governmental Tort Claims Act ('GTCA'), OKLA. STAT. tit. 51, § 151 *et seq.*, specifically §§ 156 and 157 pertaining to the statute of limitations, are in conflict with OKLA. STAT. tit. 12, § 95(A)(11)?

2. Whether the claim presentation process and limitations contemplated by OKLA. STAT. tit. 51, §§ 156 and 157 can be read *in pari materia* with OKLA. STAT. tit. 12, § 95(A)(11)?

3. Whether the statute of limitations on a claim brought by a prisoner for personal injury against a political subdivision of the state, pursuant to the GTCA, is governed by the statute of limitations in the GTCA, OKLA. STAT. tit. 51, §§ 156 and 157, or by OKLA. STAT. tit. 12, § 95(A)(11)?

4. When does a cause of action accrue if the applicable statute of limitations on a claim brought against a political subdivision of the state for injury to a prisoner is governed by OKLA. STAT. tit. 51, §§ 156 and 157?

5. If OKLA. STAT. tit. 12., § 95(A)(11) is the applicable statute of limitations on a claim brought by a prisoner for personal injury against a political subdivision of the state, does the 2004 enactment, or 2005 amendment, which adds the language 'claims for injury to the rights of another,' govern the claim?"

We answer (a) that a cause of action accrues at the time a plaintiff may maintain the claim, (b) that the statutes of limitation tendered for our construction are in conflict, and (c) that the Governmental Tort Claims Act controls. By today's answers the second and fifth questions are rendered moot.

## I

### THE ANATOMY OF FEDERAL LITIGATION

¶ 2 On October 1, 2004 Joshua Brown (plaintiff) was incarcerated at the Creek

---

1. The provisions of 20 O.S.2001 § 1602 are:
 "Power to Answer. The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."

County Jail. He requested prescribed medication from defendant Cindy Newell, L.P.N. (defendant) and, by October 22, 2004, he had properly submitted a written request for medication. Those requests were ignored.

¶3 On November 1, 2004 plaintiff was rushed to St. John Medical Center in Tulsa, Oklahoma, where he underwent a partial colectomy. Plaintiff claims that his failure to receive the requested medication necessitated the surgical procedure and has resulted in permanent injury. On January 30, 2005 plaintiff gave notice of his claim to the government sought to be sued. The government did not respond.

¶4 On March 20, 2006 plaintiff brought this action against defendants in the District Court in Creek County, Oklahoma, alleging negligence and deprivation of constitutional rights. Defendants removed the suit in reliance on federal question jurisdiction. Unable to determine how Oklahoma law would choose between two provisions in her statutes of limitation that were asserted as applicable to the inmate's claim in his suit against a political subdivision of the government, the federal district court posed to this court the legal questions we answer today.

## II

## DEFINING THE POINT AT WHICH A CAUSE OF ACTION ACCRUES

■ ¶5 Before determining whether the limitations in the Governmental Tort Claims Act and those in 12 O.S. Supp.2005 § 95 (A)(11) may be read *in pari materia*, we must first determine at what point a cause of action accrues. Plaintiff argues that a cause of action accrues when the claim may be maintained, while defendant argues that a cause accrues at the moment the elements of the breach arise. Oklahoma courts have

used these definitions interchangeably and without regard to any possible disparity.[2] The court encapsulated its apparent conclusion with respect to the synonymy of the definitions when it wrote: "The elements of a cause of action arise, that is, the cause of action accrues when a litigant first could have maintained his action."[3] The court has also held that the term accrual "means to become a present and enforceable demand."[4] On one occasion, a dissenter articulated accrual in a slightly different manner: "Generally, it may be said that a cause of action accrues for purposes of statutory limitations when a party becomes entitled to enforce a claim against another."[5] **Regarding these definitions in light of the more prevalent articulations leads one to the inescapable conclusion that a cause of action does not accrue until the claim may be maintained.**

■ ¶6 Defendant argues that a plaintiff must complete all the notice requirements and file suit within one entire year because "One waits at his own risk."[6] That reference appears in a case that involved a delay in giving notice to the appropriate political subdivision. Here, GTCA's § 157 states, "A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part." The instant case is distinguishable because, while no procedure dehors the GTCA calls for a delay pending giving notice, the terms of the GTCA do so require by commanding a delay before a suit may be brought. **In short, a plaintiff has no access to the courts while awaiting the political subdivision's decision.**

¶7 Because under GTCA's § 157(A) the right to sue does not attach until the claim has been denied or is deemed denied, we hold that causes of action brought under the GTCA do not accrue until that point.

2. See, e.g., *Rivas v. Parkland Manor*, 2000 OK 68, ¶23, 12 P.3d 452, 458; *Neer v. State ex rel. Oklahoma Tax Com'n*, 1999 OK 41, ¶19, 982 P.2d 1071, 1079; *Roberts v. University of Iowa Hospitals and Clinics*, 2003 OK 33 ¶6, 66 P.3d 453, 455.

3. *MBA Commercial Const., Inc. v. Roy J. Hannaford Co.*, 1991 OK 87, ¶13, 818 P.2d 469, 473.

4. *Walker v. Bowman*, 1910 OK 290, ¶2, 111 P. 319.

5. *Wille v. Geico Cas. Co.*, 2000 OK 10, ¶8, 2 P.3d 888, 894 (Opala, J., dissenting on an unrelated point).

6. *Zachary v. State ex rel. Dept. of Corrections*, 2001 OK CIV APP 120, ¶5, 34 P.3d 1171, 1173.

## III

### DETERMINING THE CONTROLLING STATUTE

 ¶ 8 The terms of § 157 of the GTCA provide that no action brought under that act may be filed more than 180 days after notice of claim to the appropriate political subdivision has been denied or is deemed denied. The terms of 12 O.S. Supp.2005 § 95 (A)(11) require all actions filed by an inmate to be commenced within one year of accrual. Inasmuch as we hold that a cause of action does not accrue until the claim may be maintained, the provisions of the GTCA must govern here.

 ¶ 9 The plain language of the GTCA dictates that its prescriptions must control over any others. The terms of GTCA's § 164 provide that only those other statutes that are "not inconsistent" with the GTCA "shall apply to and govern all actions brought under the provisions of this act." Section 153 defines the liability of the state as exclusively governed by the GTCA. Further, in case of a conflict between a specific and a general statute, the specific enactment will control.[7] It is clear that the legislature intended for the GTCA specifically to define the outer limit of Oklahoma's sovereign immunity. GTCA's statute-of-limitation provisions, as distinguished from those contained in the generic section on civil procedure, must hence govern.

¶ 10 **CERTIFIED QUESTION ANSWERED.**

¶ 11 All justices concur.

---

7. See, e.g., *Scruggs v. Edwards,* 2007 OK 6, ¶ 14 n. 11, 154 P.3d 1257, 1263 n. 11; *Southern Oklahoma Resource Center v. Sparks,* 2006 OK CIV APP 69, ¶ 9, 136 P.3d 738, 740; *Phillips v.*

*Hedges,* 2005 OK 77, ¶ 12, 124 P.3d 227, 231; *Tripp v. State ex rel. Department of Public Safety,* 2005 OK CIV APP 47, ¶ 9, 117 P.3d 266, 269.