JOHNSON v. GEO GROUP, INC.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:JOHNSON v. GEO GROUP, INC.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 JOHNSON v. GEO GROUP, INC.
2019 OK CIV APP 13
436 P.3d 759
Case Number: 116098
Decided: 06/15/2018
Mandate Issued: 03/13/2019
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2019 OK CIV APP 13, 436 P.3d 759

 

KENNETH RAY JOHNSON, individually; and RICHARD BALDWIN, individually, Plaintiffs/Appellants,
v.
GEO GROUP, INC., STATE OF OKLAHOMA, ex rel., OKLAHOMA DEPARTMENT OF CORRECTIONS, a state political subdivision, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
COMANCHE COUNTY, OKLAHOMA

HONORABLE GERALD NEUWIRTH, TRIAL JUDGE

AFFIRMED IN PART, VACATED IN PART AND 
REMANDED FOR FURTHER PROCEEDINGS

Lauri J. Miller, MILLER LAW FIRM, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellants

Thomas G. Ferguson, Jr., WALKER, FERGUSON & FERGUSON, Oklahoma City, Oklahoma, for Defendant/Appellee GEO Group, Inc.

Kindanne C. Jones, OFFICE OF ATTORNEY GENERAL, Oklahoma City, Oklahoma, for Defendant/Appellee State of Oklahoma, ex rel., Oklahoma Department of Corrections

JOHN F. FISCHER, JUDGE:

¶1 Kenneth Ray Johnson sued the GEO Group, Inc., GEO Care, and their employees Kirk Smith and Connie Wood (the GEO parties) concerning two alleged assaults while he was in the custody of the Department of Corrections and incarcerated at GEO's Lawton Correctional Facility. Johnson further alleged that he was denied medical care for the injuries he suffered as a result of the assaults. Johnson also sued the DOC alleging that he continued to be denied medical care after he was transferred from GEO's facility back to a DOC facility. Richard Baldwin sued the DOC alleging it improperly disclosed his medical, psychological and juvenile criminal records to counsel for GEO. Johnson and Baldwin appeal the district court's judgment in favor of the defendants granting their motions for summary judgment. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter is submitted without appellate briefing.

¶2 We affirm the judgment in favor of the DOC as to Baldwin's claim because the undisputed facts in this record show that the DOC did not disclose Baldwin's medical, psychological or juvenile criminal records. As to Johnson's claim against the DOC, we affirm that portion of the judgment regarding Johnson's tort claims because the DOC is immune from suit for those alleged torts. However, the DOC is not immune to the extent that it denied medical care for Johnson's serious medical needs in violation of his rights protected by Article 2, section 9 of the Oklahoma Constitution. We vacate that portion of the district court's judgment and remand that aspect of Johnson's claim for further proceedings.

¶3 We vacate the judgment in favor of the GEO parties because Johnson complied with the notice provisions of the Governmental Tort Claims Act, 51 O.S.2011 §§ 151 to 172, and filed his action within the applicable statute of limitations, and there are issues of fact concerning when Johnson's cause of action accrued. That aspect of this case is also remanded for further proceedings.

BACKGROUND

¶4 At the time the events precipitating Johnson and Baldwin's claims occurred, both men were in the custody of the DOC. Pursuant to a contract between the DOC and the GEO Group, they were incarcerated at GEO's Lawton Correctional Facility, a private prison. Johnson alleges that he was physically assaulted on two occasions by a GEO correctional officer and that he was denied medical care for his injuries after the assaults. The alleged assaults occurred in late March and early April of 2012. Shortly thereafter, Johnson was transferred back to a DOC facility where he stayed until he was released in March of 2013. After his return to a DOC facility, Johnson sued the GEO Group and its correctional officer in federal court regarding the alleged assaults. Johnson's federal court complaint was filed on April 19, 2012, and alleged that the GEO Group failed to properly train and supervise its correctional officer and that its medical personnel refused to provide treatment for the injuries Johnson suffered as a result of the assaults. Johnson's claim against the GEO parties in this case is based only on the alleged denial of medical care. Johnson's amended petition states: "No federal causes of action are sought at this time by Plaintiffs."

¶5 Baldwin claims to have been a witness to one of the alleged assaults and his deposition was taken in conjunction with Johnson's federal suit. Baldwin's claim is based on an alleged improper and unauthorized disclosure of his medical, psychological and juvenile criminal records which were then used as the basis for questioning him during his deposition.

¶6 Johnson and Baldwin filed their petition in the Comanche County district court on April 4, 2014. They named the DOC, several of its employees and the GEO parties as defendants. On February 9, 2015, Johnson and Baldwin dismissed the DOC defendants without prejudice. Both plaintiffs filed essentially the same claim against the DOC defendants in the district court for Oklahoma County on May 28, 2015; however, they only issued summons for and obtained service on the DOC. Johnson and Baldwin then filed an amended petition in the Comanche County case on June 1, 2015, naming only the GEO parties as defendants. The two cases proceeded independently until the DOC voluntarily agreed to have the Oklahoma County case consolidated with the Comanche County case. The transcript of the Oklahoma County case pleadings was filed in the Comanche County case on January 27, 2016.

¶7 Prior to the consolidation of the cases, the GEO parties filed a motion to dismiss in the Comanche County case. On January 20, 2016, the district court denied GEO's motion as to Johnson's claim but granted that motion as to Baldwin's claim. Baldwin did not seek leave to amend nor did he file an amended petition. Further, Baldwin did not appeal the order dismissing his claim. Therefore, Baldwin's claim against the GEO parties has been terminated in their favor and is not an issue in this appeal.

¶8 After the Oklahoma and Comanche County cases were consolidated, all of the defendants filed motions for summary judgment. Johnson and Baldwin appeal the district court's May 12, 2017, Journal Entry of Judgment granting those motions and entering judgment in favor of the defendants.

STANDARD OF REVIEW

¶9 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment in this case. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." 12 O.S.2011 § 2056(C). When deciding a motion for summary judgment, the district court considers factual matters but the ultimate decision is purely legal. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. The de novo standard controls an appellate court's review of a district court order granting summary judgment. Id. De novo review involves a plenary, independent, and non-deferential examination of the trial court's rulings of law. Neil Acquisition, L.L.C. v. Wingrod Invest. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

ANALYSIS

¶10 We address the plaintiffs' appeals of the judgments in favor of the GEO parties and the DOC separately.

I. Baldwin's Claim against the DOC

¶11 Baldwin alleges that his juvenile criminal record was unlawfully disclosed to counsel for the GEO parties and used at his deposition. Baldwin claimed to be a witness to one of the alleged assaults on Johnson at GEO's facility. Baldwin's deposition was taken on October 29, 2013, after he was released from incarceration. During the deposition, GEO's counsel asked Baldwin if he had any criminal history prior to the conviction for which he had been incarcerated at GEO's facility. Baldwin answered "juvenile." A series of nine questions and answers followed, which appear to have been redacted later at the request of Baldwin's counsel. Baldwin sued the DOC alleging it unlawfully provided GEO's counsel his Texas juvenile records, which were used as the basis for these questions at his deposition.

¶12 In its motion for summary judgment, the DOC conceded that it provided some of Baldwin's records to GEO's counsel but argued that "no juvenile records nor medical/psychological records were requested or produced to [GEO's counsel]." The quoted statement is contained in an affidavit supporting the DOC's motion for summary judgment. In his response, Baldwin stated that he was unable to admit or deny the statement in the affidavit. Nonetheless, Baldwin argued: "Some how [GEO's] counsel while representing Defendant GEO in the Federal Court litigation had access to Baldwin's juvenile records and asked him specific questions."

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or as otherwise provided in this rule, set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

12 O.S.2011 § 2056(E).

Once defendant has introduced evidentiary materials indicating that there is no substantial controversy as to one fact material to plaintiff's cause of action and that this fact is in defendant's favor, plaintiff then has the burden of showing that evidence is available which would justify a trial of the issue.

Runyon v. Reid, 1973 OK 25, ¶ 13, 510 P.2d 943. The DOC's motion for summary judgment affirmatively established that if Baldwin's medical and juvenile records were improperly released, the DOC did not do so. Baldwin submitted no evidentiary material that would "justify a trial of [that] issue." Id. The district court's judgment in favor of the DOC as to Baldwin's claim is affirmed.

II. Johnson's Appeal of the Judgment in Favor of the DOC

¶13 Johnson's claim against the DOC is based on the alleged assaults at GEO's facility. Johnson alleges that the DOC "failed to take proper and immediate action" after the assaults, and after he was transferred back to a DOC facility, DOC healthcare providers continued to deny him medical care. Johnson alleged that the DOC's conduct constituted various State torts including assault and battery, civil conspiracy, negligence, breach of fiduciary duty, fraud and intentional infliction of emotional distress. Johnson also alleged that this conduct violated his civil rights protected by Okla. Const. art. 2, §§ 9 and 30.

¶14 With respect to the latter, Johnson contends that he is asserting a "Bosh claim." In Bosh v. Cherokee County Governmental Building Authority, 2013 OK 9, 305 P.3d 994, the Oklahoma Supreme Court held that pre-trial detainees have a private right of action pursuant to Article 2, § 30 of the Oklahoma Constitution to redress the use of excessive force. This is not a Bosh case. Johnson was incarcerated as the result of a prior conviction at the time he was allegedly assaulted. Johnson's claim is governed by Okla. Const. art. 2, § 9. Bosh, 2013 OK 9, ¶ 22 (citing Washington v. Barry, 2002 OK 45, 55 P.3d 1036, and noting its holding that a private action for excessive force exists pursuant to Article 2, § 9 for incarcerated persons).

¶15 As related to that claim, Johnson's petition alleges that the DOC failed to take immediate action after the alleged assault to provide proper medical care, and that when he was transferred back to DOC's facility, DOC healthcare providers not only knew about the injury he suffered at the GEO facility but also intentionally denied him needed medical care. Johnson's petition alleges that they continued to deny him medical care until he was released in March of 2013. In his response to the DOC's motion for summary judgment, Johnson relied on his deposition testimony stating that DOC medical personnel not only ignored his request for medical care but also told him "to deal with the injury when he got out."

¶16 The DOC's reply to Johnson's response does not offer evidence contradicting Johnson's testimony or the affidavit of the physician who treated Johnson after he was released from the DOC's facility. That treating physician stated that he could not rule out the possibility that Johnson's post-incarceration injury resulted from the lack of medical care Johnson alleged while he was in DOC custody. The DOC did not offer evidence contradicting Johnson's evidence, but even if it had, that would only have created an issue of fact precluding summary judgment. Summary judgment is only proper where "there is no genuine issue as to any material fact." 12 O.S.2011 § 2056(C). See Winston v. Stewart & Elder, P.C., 2002 OK 68, ¶ 10, 55 P.3d 1063 (noting that the district court is required to rule out all theories of liability fairly comprised within the evidentiary materials).

¶17 Further, and contrary to the DOC's argument, Johnson has not just sued the DOC for acts or omissions committed by its contractor, the GEO Group or the GEO Group's employees. Johnson's claim against the DOC is based on the DOC's alleged failure to act while he was in DOC custody and incarcerated in GEO's facility, as well as for the DOC's failure to provide medical care after he was transferred back to a DOC facility. The record shows that Johnson was transferred from the GEO facility to a DOC facility on April 13, 2012, shortly after the alleged assaults, and that he was released from custody by the DOC on March 25, 2013. As a result, Johnson's claim against the DOC is not, as the DOC argues, based on acts that occurred prior to April 19, 2012, the date on which he filed his federal court case. The last date on which Johnson alleges that he was denied medical care by the DOC was March 25, 2013, the date he was released by the DOC.

¶18 Rather than challenging the merits of Johnson's claim, the DOC's motion for summary judgment raised three essentially jurisdictional arguments: (1) Johnson's suit is barred because he failed to comply with the notice provisions of the Governmental Tort Claims Act; (2) the DOC is immune from suit for the conduct that Johnson alleges occurred; and (3) the district court did not have jurisdiction because Johnson failed to exhaust his administrative remedies.

A. The Notice Argument

¶19 The DOC first argues that Johnson's suit must be dismissed because he failed to comply with the notice requirements of the Tort Claims Act. 51 O.S.2011 §§ 151 to 172. "Compliance with the statutory notice provisions of the [Tort Claims Act] is a jurisdictional requirement to be completed prior to the filing of any pleadings." Hall v. The GEO Group, Inc., 2014 OK 22, ¶ 13, 324 P.3d 399. Section 156(B) of the Tort Claims Act provides:

[C]laims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

The last date on which Johnson could have been denied medical care was March 25, 2013, the date he was released from the DOC facility. The record contains a Notice of Tort Claim dated February 5, 2014, from Johnson's attorney to the DOC. The DOC does not argue that this notice was defective. And, this notice was clearly provided "within one (1) year after the loss occurs." Id. Consequently, Johnson complied with the one year requirement of section 156(B) of the Tort Claims Act.

¶20 Also in the record is a letter from the Oklahoma Office of Management and Enterprise Services denying Johnson's February 2014, tort claim. That letter states that Johnson's claim was denied as of March 14, 2014, and that he had one hundred and eighty days within which to file suit. Section 157(B) of the Tort Claims Act provides: "No action for any cause arising under this act . . . shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section." Johnson's Comanche County lawsuit was filed on April 4, 2014, and named the DOC as a defendant. Johnson's Comanche County petition satisfied the filing requirements of section 157(B).

¶21 However, Johnson voluntarily dismissed his Comanche County case against the DOC on February 9, 2015. He did not sue the DOC again until May 28, 2015, when he filed his Oklahoma County action. That case was filed more than one hundred and eighty days after Johnson's tort claim was denied on March 14, 2014. Consequently, Johnson's Oklahoma County case is barred by the limitation period in section 157(B), unless Johnson is entitled to the benefit of his Comanche County filing. We hold that he is.

If any action is commenced within due time, and . . . if the plaintiff fail in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the . . . failure although the time limit for commencing the action shall have expired before the new action is filed.

12 O.S.2011 § 100. "Section 100 permits the refiling of a governmental tort claims action only where the court's power has been invoked by the original action." Cruse v. Bd. of Cnty. Comm'rs of Atoka Cnty., 1995 OK 143, ¶ 18, 910 P.2d 998. Johnson's original Comanche County case properly invoked the district court's jurisdiction and his Oklahoma County action was filed within one year after the dismissal of his Comanche County case. Consequently, Johnson has satisfied the notice and filing requirements of sections 156 and 157 of the Tort Claims Act, and the DOC is not entitled to judgment on that basis.

B. The Immunity Argument.

¶22 The DOC next argues, citing 51 O.S. Supp. 2016 § 155 of the Tort Claims Act, that it is immune from Johnson's suit: "The state or a political subdivision shall not be liable if a loss or claim results from: . . . [p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." 51 O.S. Supp. 2016 § 155(25). Although the DOC is correct in some respects, the Tort Claims Act "cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens." Bosh v. Cherokee Cnty. Governmental Bldg. Auth., 2013 OK 9, ¶ 23, 305 P.3d 994 (construing the identical exemption, then numbered as section 155(24), regarding claims filed by pretrial detainees). Nonetheless, Johnson's Oklahoma tort claims, which include assault and battery, civil conspiracy, breach of fiduciary duty, intentional infliction of emotional distress and fraud, relate to the operation of a correctional facility and the DOC is immune from suit for those claims. 51 O.S. Supp. 2016 § 155(25). The district court's judgment in favor of the DOC regarding Johnson's State tort claims is affirmed. The judgment regarding Johnson's constitutional claim is vacated.

C. The Exhaustion Argument

¶23 In addition to his tort claims, however, Johnson also alleges that by denying him medical care, the DOC violated his Oklahoma Constitutional rights pursuant to Article 2, § 9, which prohibits cruel and unusual punishment. As this Court held in Edelen v. Board of Commissioners of Bryan County, Johnson's allegation that the DOC knowingly denied him care for a serious medical need would "establish a violation of Okla. Const. art. 2, § 9." Edelen, 2011 OK CIV APP 116, ¶ 8, 266 P.3d 660 (cert. denied, October 24, 2011).[1] In doing so, we relied on Washington v. Barry, 2002 OK 45, 55 P.3d 1036, in which the Oklahoma Supreme Court recognized that convicted and incarcerated individuals have a private right of action pursuant to Article 2, § 9's prohibition of cruel and unusual punishment to redress the use of excessive force.

¶24 However, the holding in Washington v. Barry was limited to the use of excessive force and the Supreme Court did not address the full scope of Article 2, § 9 or whether it encompassed medical claims. Therefore, in Edelen, this Court also relied on Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976), in which the United States Supreme Court held that prisoners have a claim pursuant to the Eighth Amendment to the United States Constitution for deliberate indifference to serious medical needs. We did so for two reasons.

¶25 First, in the absence of controlling State authority: "Federal case law provides a logical framework for determining the scope of the protection guaranteed by Oklahoma constitutional law." Gaylord Entertainment Co. v. Thompson, 1998 OK 30, n.50, 958 P.2d 128. And, following this principle, the Washington Court had relied on United States Supreme Court Eighth Amendment precedent when it determined that Oklahoma prisoners have a private right of action for the use of excessive force pursuant to Article 2, § 9 of Oklahoma's Constitution. Article 2, § 9 is the Oklahoma counterpart to the Eighth Amendment.

¶26 Second, the Oklahoma Supreme Court followed Estelle v. Gamble in Estate of Crowell v. Board of County Commissioners of the County of Cleveland, 2010 OK 5, ¶¶ 24-25, 237 P.3d 134, finding a federal constitutional claim for denial of medical care pursuant to the Eighth Amendment. We conclude that the Oklahoma Supreme Court would reach the same result that we reached in Edelen regarding Johnson's constitutional claim against the DOC. The deliberate denial of care for a prisoner's serious medical needs would violate Article 2, § 9.

¶27 The DOC does not address whether Johnson has an Article 2, § 9 claim in this case, but contends that the district court would not have jurisdiction of any such claim because Johnson failed to comply with the administrative exhaustion requirements in Title 57 of the Oklahoma statutes. Section 564 of Title 57 requires a prisoner in the custody of the DOC to "completely exhaust all administrative remedies on all potential claims" before filing suit. 57 O.S.2011 § 564. Section 566.3 requires an inmate to have "exhausted all the remedies as provided in the grievance procedure" of the DOC before the district court may entertain the suit. 57 O.S.2011 § 566.3(G)(2). Finally, "full and complete exhaustion of all administrative and statutory remedies on all potential claims against . . . the Department of Corrections . . . is a jurisdictional requirement and must be completed prior to the filing of any pleadings." 57 O.S.2011 § 566.5. Whether the exhaustion requirement applies to Johnson's constitutional claim has not been previously decided by the Supreme Court. See Washington v. Barry, 2002 OK 45, n.3 (stating that "exhaustion of administrative remedies is not an issue in this appeal," but noting the federal exhaustion requirement applicable to claims for a violation of constitutional rights filed by a prisoner pursuant to 42 U.S.C. § 1983).

¶28 However, we find some guidance on this issue in Bosh v. Cherokee County Governmental Building Authority, 2013 OK 9, 305 P.3d 994. "The Okla. Const. art. 2, § 30, provides a private cause of action for excessive force, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act . . . ." Id. ¶ 33. And, in "Washington v. Barry . . . this Court held that a private cause of action may exist for inmates to recover for excessive force under the provisions of the Okla. Const. art. 2, § 9 and the 8th Amendment of the United States Constitution -- despite the provisions of the [Tort Claims Act]." Id. ¶ 18 (footnotes omitted). But, exhaustion of the DOC's grievance procedure was not an issue in Washington or Bosh. And, in Hall v. The GEO Group, Inc., 2014 OK 22, 324 P.2d 399, the Court specifically refused to express an "opinion on the exhaustion of administrative remedies as applied to GEO's grievance procedure." Id. n.30.

¶29 The DOC argues that Johnson did not satisfy the exhaustion requirement because he did not initiate or complete the DOC grievance process. This argument ignores traditional rules of statutory construction. Both sections 564 and 566.5 of Title 57 require exhaustion of administrative "remedies," not exhaustion of an administrative "process." "[T]he general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221, ¶ 19, 301 P.2d 212. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213 (footnote omitted).

¶30 Second, this construction is consistent with the express language of section 566.3(G)(2), which also only requires exhaustion of "all the remedies as provided in the grievance procedure" of the DOC. 57 O.S.2011 § 566.3(G)(2) (emphasis added). The Legislature did not require a prisoner to file a grievance and complete the grievance "process" before filing suit. The Legislature required a prisoner to exhaust pursuit of "all available administrative remedies. . . ." 57 O.S.2011 § 564.

¶31 Finally, this construction is consistent with federal law on this issue. In the appellate record is the Report and Recommendation of the federal magistrate judge filed in Johnson's federal case. That Report considered the GEO Group's motion for summary judgment arguing that Johnson's case should be dismissed for failure to exhaust administrative remedies available through the DOC's grievance process which GEO Group was required to adopt and follow. The Report states that exhaustion of available administrative remedies is required before a prisoner can sue in federal court, citing 42 U.S.C. § 1997e(a) (2006). The Report also states that Johnson did not exhaust the administrative process but concludes that "he had no obligation to do so" because the GEO Group did not identify any remedies that would have been available to Johnson if he had completed the grievance process. The Report recommended that the GEO Group's motion for summary judgment be denied. The federal district court adopted that recommendation and denied the GEO Group's motion for summary judgment on that basis.

¶32 Johnson sued the DOC for actual and punitive damages. Absent some form of immunity, monetary damages are an appropriate remedy for the violation of constitutional rights. Gay Activists Alliance v. Bd. of Regents of Univ. of Okla., 1981 OK 162, ¶ 39, 638 P.2d 1116. The DOC's Inmate/Offender Grievance Process provides at paragraph II.B.4, that: "Grievances shall not be submitted requesting monetary compensation." Therefore, no remedy was available to Johnson for the monetary damages he seeks for the alleged violation of his Article 2, § 9 rights. The DOC's grievance process was not even available to him. If no administrative remedy is available, there is no administrative process to exhaust.

¶33 We hold that sections 564 and 566.5 of Title 57 only prevent a court from obtaining jurisdiction of a prisoner's Okla. Const. art. 2, § 9 claim if the DOC's grievance procedure would provide a remedy comparable to that available through an action in district court. In this case, it does not.

¶34 Consequently, Johnson was not required to initiate or complete the DOC's Inmate/Offender Grievance Process with respect to his constitutional claim for the denial of medical care prior to suing the DOC. The district court had jurisdiction of that portion of Johnson's petition. The judgment in favor of the DOC regarding Johnson's Article 2, § 9 claim is vacated, and that aspect of this case is remanded for further proceedings.

III. Johnson's Appeal of the GEO Parties' Judgment

¶35 Johnson's Amended Petition in the Comanche County case alleges that he was physically assaulted on two occasions by a correctional officer employed by the GEO Group. From the record, it appears that the assaults occurred on April 5, 2012, and "about two weeks" before that. The individual that Johnson alleges committed these assaults is not named as a defendant in this case. However, Johnson did name him and the GEO Group as defendants in his April 2012 federal case. In this case, Johnson alleges that the GEO Group and GEO Care failed to provide medical care after the assault. Johnson's amended petition also alleges that GEO employees, Smith and Wood, were employed as medical personnel. But, the body of the petition does not allege any specific wrongdoing by either of these defendants.

¶36 Johnson claims that by denying him medical care, the GEO parties violated the rights guaranteed to him pursuant to Okla. Const. art. 2, § 9. He also alleges that the GEO parties have committed associated State torts including assault and battery, civil conspiracy, negligence, breach of fiduciary duty, fraud and intentional infliction of emotional distress. Like the DOC's motion, the GEO parties' motion for summary judgment does not principally rely on undisputed substantive facts, but raises essentially jurisdictional arguments.

A. Failure to Comply with Tort Claims Notice

¶37 The GEO parties argue that they are entitled to judgment because Johnson failed to comply with the notice provisions of the Tort Claims Act, citing 57 O.S.2011 § 566.4(B)(2): "No tort action or civil claim may be filed against any . . . private correctional company . . . until all of the notice provisions of the Governmental Tort Claims Act have been fully complied with by the claimant." See also 57 O.S.2011 § 566.5:

In any legal proceeding filed by an inmate, full and complete exhaustion of all administrative and statutory remedies on all potential claims against the state, the Department of Corrections, private entities contracting to provide correctional services . . . is a jurisdictional requirement and must be completed prior to the filing of any pleadings.

The section 566.5 requirement for complete exhaustion of "statutory remedies" includes the notice provisions of the Tort Claims Act. Hall v. The GEO Group, Inc., 2014 OK 22, ¶ 13, 324 P.3d 399. This is a jurisdictional requirement that must be satisfied before any suit can be filed against a private correctional facility. Id.

¶38 The central question in this aspect of Johnson's appeal is, what did the Legislature intend when it imposed these notice requirements on certain prisoner suits? The answer to that question requires construction of the relevant provisions of the Tort Claims Act, guided by the general principle that "the primary goal of statutory construction is to ascertain and follow the intention of the legislature and in construing statutes relevant provisions must be considered together, where possible, to give force and effect to each." Ledbetter v. Okla. Alcoholic Beverage Laws Enf't Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172 (footnotes omitted).

¶39 Unlike the DOC, the GEO parties are not protected by the State's sovereign immunity adopted in the Tort Claims Act. "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees . . . shall be immune from liability for torts." 51 O.S.2011 § 152.1(A). None of the GEO parties is the State of Oklahoma, a political subdivision of the State or an employee of either. See 51 O.S. Supp. 2014 §§ 152 (11) and 152(13). And, we cannot add language to extend sovereign immunity to the GEO parties when the Legislature has not chosen to do so. "[T]he general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221, ¶ 19, 301 P.2d 212.

¶40 Further, the Tort Claims Act does not provide a private right of action against the State for Johnson's claim against the GEO parties. "The state or a political subdivision shall not be liable if a loss or claim results from: An act or omission of an independent contractor or consultant or his or her employees . . . ." 51 O.S. Supp. 2016 § 155(18). Cf., 51 O.S.2011 § 153.1 ("Nothing in the Governmental Tort Claims Act shall be construed as allowing an action or recovery against this state . . . due to the housing of federal inmates or inmates from another state in facilities owned or operated by private prison contractors."). Consequently, it is clear that the Legislature did not intend to create any new cause of action. It appears that the Legislature intended to impose nothing more than a procedural requirement that must be satisfied before any suit can be filed against a private correctional facility. Pursuant to this construction, the GEO parties' jurisdictional argument is limited to the notice provisions of the Tort Claims Act.

¶41 The notice section of the Tort Claims Act provides: "A claim against the state shall be in writing and filed with the Office of the Risk Management Administrator of the Office of Management and Enterprise Services . . . ." 51 O.S. Supp. 2012 § 156(C) (emphasis added). Section 156(D) of the Tort Claims Act sets out the requirements for filing a notice of tort claim against a political subdivision of the State and provides that the claim shall be "filed with the office of the clerk of the governing body." 51 O.S. Supp. 2012 § 156(D) (emphasis added). There is no provision in the Tort Claims Act requiring the submission of a notice of tort claim to a non-governmental entity like the GEO Group. And, there is no entity identified in the Tort Claims Act as the person designated to receive a notice of tort claim on behalf of a non-governmental entity like the GEO Group. The only notice required by the Tort Claims Act is notice to the State's risk manager or the clerk of its governing body of its political subdivisions.

¶42 Consequently, there is clear inconsistency between the literal direction in the exhaustion provisions of Title 57 and the notice provisions of the Tort Claims Act. "When a strict literal construction leads to an inconsistent or incongruent result between provisions, we will utilize rules of statutory construction to reconcile the discord and ascertain the legislative intent." Hogg v. Okla. Cnty. Juvenile Bureau, 2012 OK 107, ¶ 7, 292 P.3d 29 (citation omitted). In Hall v. The GEO Group, Inc., 2014 OK 22, 324 P.3d 399, a prisoner in the custody of the DOC sued the private prison in which he was incarcerated for the alleged negligence of its ambulance driver. The prisoner did not file any notice or otherwise attempt to comply with the notice provisions of the Tort Claims Act before filing his suit. In affirming dismissal of the prisoner's case for lack of jurisdiction, the Supreme Court held that compliance with the notice provisions of the Tort Claims Act was required "prior to the filing of any pleadings." Id. ¶ 13. But, the Court did not address what notice was required or to whom it was to be submitted because the plaintiff had not submitted any notice. Therefore, what Johnson was required to do before filing suit against the GEO parties has not yet been settled.

¶43 As discussed in Part II(A) of this Opinion, Johnson did satisfy the notice requirements of the Tort Claims Act as to his claim against the DOC. Johnson's tort claim notice was submitted on February 6, 2014, less than one year after the date he was allegedly last denied medical care. See 51 O.S. Supp. 2012 § 156(B). And, Johnson's Comanche County suit was filed on April 4, 2014, within one hundred and eighty days after his tort claim was denied on March 12, 2014. See 51 O.S.2011 § 157(B). Those are all of the "notice provisions" of the Tort Claims Act available to Johnson or with which he could have complied. 57 O.S.2011 § 566.4(B)(2). We find no authority supporting the GEO parties' argument that the filing period for Johnson's notice of tort claim should have begun on April 13, 2012, the last date on which Johnson was incarcerated in their facility. This may have been the date on which the GEO parties last denied Johnson medical care, but that does not resolve the Tort Claims Act notice issue. The GEO parties' argument fails to consider the effect of the notice requirement on the accrual of Johnson's cause of action against them.

¶44 Although we find no provision in the Tort Claims Act requiring Johnson to notify any of the GEO parties of his claim against them, Johnson was clearly required to notify someone. See 57 O.S.2011 §§ 566.4 and 566.5. Even though Johnson was incarcerated at GEO's Lawton facility when these events occurred, he remained in the custody of the DOC. And, the DOC was responsible for selecting the GEO Group's facility as the location of Johnson's incarceration. Even if the DOC might ultimately be able to avoid liability for the acts or omissions of the GEO parties, see 51 O.S. Supp. 2016 § 155(18) and (25), the DOC should still be notified when prisoners in its custody have been harmed. It appears that is what the Legislature intended when it required a prisoner to comply with the notice provisions of the Tort Claims Act before suing a private correctional company under contract with the DOC.

¶45 As previously discussed, Johnson complied with the notice provisions of the Tort Claims Act available to him according to the literal language of the statute. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213. The GEO parties have not directed us to any other Tort Claims Act notice procedure available to Johnson. Summary judgment in favor of the GEO parties was not available on the basis that Johnson failed to comply with the notice provisions of the Tort Claims Act.

B. GEO's Statute of Limitations Argument

¶46 Next, the GEO parties argue that Johnson's "Bosh claim" is barred by 12 O.S. Supp. 2017 § 95(11), the statute of limitations referencing suits based on facts that occurred while the plaintiff was a prisoner. Again, we note that Johnson's constitutional claim here is not based on the Article 2, § 30 claim recognized in Bosh v. Cherokee County Governmental Building Authority, 2013 OK 9, 305 P.3d 994. Johnson's claim is based on Article 2, § 9 of the Oklahoma Constitution. Nonetheless, the substance of the GEO parties' argument is that the events giving rise to Johnson's claim against them occurred, at the latest, by April 13, 2012, when he was transferred back to the DOC. Because Johnson's suit was not filed until April 4, 2014, they contend that Johnson's suit is barred by the one-year limitation period in 12 O.S.2011 § 95(11).

¶47 The applicable provision of section 95 provides:

A. Civil actions . . . can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

11. All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:

a. the State of Oklahoma,
b. a contractor of the State of Oklahoma, or
c. a political subdivision of the State of Oklahoma,

. . . shall be commenced within one (1) year after the cause of action shall have accrued . . . .

12 O.S.2011 § 95(11). However, in Brown v. Creek County, 2007 OK 56, 164 P.3d 1073, the Supreme Court held that the one-year period in section 95(11) did not extend the one hundred and eighty-day time limit governing suits filed pursuant to the Tort Claims Act. Id. ¶ 9. And, "limitations within the [Tort Claims] Act control over general statutory law." Rout v. Crescent Pub. Works Auth., 1994 OK 85, ¶ 8, 878 P.2d 1045. The Tort Claims Act provides: "No action for any cause arising under [the Tort Claims Act] shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim . . . ." 51 O.S.2011 § 157(B). But Brown is distinguishable on this point. Brown's suit was based on acts that occurred while he was incarcerated in the Creek County jail. And, Brown sued Creek County, a political subdivision of the State. Consequently, Brown's suit was one "arising under" the Tort Claims Act. 51 O.S.2011 § 157(B). Johnson's claim does not arise under the Tort Claims Act, nor was a waiver of sovereign immunity necessary before Johnson could recover from the GEO parties.

¶48 Section 157 only controls when an otherwise applicable limitation period provides a different or inconsistent period in which to file suit.

The laws and statutes of the State of Oklahoma and the Rules of Civil Procedure, as promulgated and adopted by the Supreme Court of Oklahoma insofar as applicable and to the extent that such rules are not inconsistent with the provisions of this act, shall apply to and govern all actions brought under the provisions of [the Tort Claims Act].

51 O.S.2011 § 164. There is no limitation period in the Tort Claims Act applicable to Johnson's claim against the GEO parties. Section 157(B) requires the commencement of a suit within one hundred and eighty days after the claim is denied but only as to suits "against the state or a political subdivision . . . ." 51 O.S.2011 § 157(A). As previously established, none of the GEO parties is either. Therefore, as to Johnson's claim against the GEO parties, section 95(11) is not "inconsistent" with the limitation provision of the Tort Claims Act.

¶49 However, we find that Brown is controlling to the extent that it establishes the time when Johnson's cause of action accrued. "[A] cause of action does not accrue until the claim can be maintained." Brown v. Creek Cnty., 2007 OK 56, ¶ 5 (emphasis in original). For one who is required to comply with the notice provisions of the Tort Claims Act, "the right to sue does not attach until the claim has been denied . . . ." Id. ¶ 7. Therefore, merely submitting a notice of tort claim does not trigger the accrual of a cause of action. Until a notice of tort claim has been denied, "a plaintiff has no access to the courts . . . ." Id. ¶ 6 (emphasis in original). We find no reason why this holding in Brown should not apply to prisoners in the custody of the DOC but incarcerated in a private prison. "[B]y extending the notice provisions of the GTCA to private prisons, the Legislature has ensured equal treatment between plaintiffs who are or were confined in state owned prisons with those who are or were confined in private prisons . . . ." Hall v. The GEO Group, Inc., 2014 OK 22, ¶ 14, 324 P.3d 399. To hold otherwise would deprive the notice recipient of an opportunity to respond, and render the notice requirement meaningless.

¶50 We hold that Johnson was legally prohibited from filing his suit against the GEO parties "until all of the notice provisions of the Governmental Tort Claims Act have been fully complied with . . . ." 57 O.S.2011 § 566.4(B)(2). Johnson complied when he submitted his notice of tort claim to the DOC on February 5, 2014. But, until that claim was denied, his cause of action did not "accrue." Brown, 2007 OK 56, ¶ 7. Johnson's tort claim was denied on March 25, 2014. He filed his Comanche County petition on April 4, 2014, within the applicable limitations period.[2] The GEO parties are not entitled to summary judgment regarding their statute of limitations argument.

¶51 Even if the accrual of Johnson's claim is not controlled by the holding in Brown, summary judgment is not appropriate. In his summary judgment response, Johnson argued that the denial of medical care after an assault like he suffered can result in a chronic condition or permanent injury. He contended that his condition was diagnosed as chronic and potentially permanent, a fact he did not discover until late 2013 when he was released from prison and finally able to see a physician. Attached to Johnson's response is a portion of the transcript from the deposition of Johnson's treating physician, which supported Johnson's argument. "The discovery rule allows the limitation period in certain tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." Digital Design Group, Inc. v. Information Builders, 2001 OK 21, ¶ 17, 24 P.3d 834 (footnote omitted).

¶52 The GEO parties did not file a reply to Johnson's summary judgment response or argue that the discovery rule was inapplicable. They merely argued that Johnson must have been aware of his injury by April 19, 2012, the date he filed his federal lawsuit based on the same injury. Consequently, a question of fact exists as to when Johnson knew of his injury. That dispute precludes summary judgment. "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." Copeland v. The Lodge Enters., Inc., 2000 OK 36, ¶ 8, 4 P.3d 699 (footnote omitted). If Johnson's cause of action accrued in late 2013, when he contends that he discovered the permanent nature of his injury, then his suit was filed within the one-year limitation period of section 95(11), the limitation period that the GEO parties argue is applicable. Summary judgment in favor of the GEO parties was not available on this basis.

C. Exhaustion of GEO's Grievance Process

¶53 The GEO parties also argue that they are entitled to judgment as a matter of law because Johnson failed to exhaust GEO's facilities' grievance procedure while he was incarcerated in their facility. According to the Special Report submitted by GEO's warden in Johnson's federal case, GEO "abides by the policy and procedure of the Oklahoma Department of Corrections regarding grievance procedures . . . ." GEO conceded in the federal case that no real remedy was available to Johnson. And, the federal court ruled against GEO on that issue, a ruling that may have preclusive effect as discussed in the following section of this Opinion. If not, our discussion of the grievance exhaustion requirement in Part II(C) of this Opinion may dispose of GEO's exhaustion argument, a matter to be resolved on remand.

D. The Medical Affidavit Issue

¶54 The GEO parties also argue that Johnson failed to file an affidavit from a medical expert with his petition as required by 12 O.S. Supp. 2013 § 19.1(A). That statute applies in "any civil action for negligence wherein the plaintiff shall be required to present the testimony of an expert witness to establish breach of the relevant standard of care . . . ." Id. In those cases, the statute requires that the plaintiff submit an affidavit, filed with the petition stating that the plaintiff has consulted with an expert and has obtained a written opinion that the plaintiff's claim is meritorious. Id. Johnson argues that an affidavit was not required because his is not a medical negligence case, but a claim based on the complete denial of medical care. The GEO parties did not respond to this argument or otherwise demonstrate the applicability of section 19.1 to this case.

¶55 Johnson also points out that GEO has taken the deposition of his medical expert and obtained the expert's opinion. The district court denied the GEO parties' motion to dismiss on this basis, and they did not seek immediate review of that decision. The GEO parties have failed to show that granting the relief they request at this point in the litigation would "secure the just, speedy, and inexpensive determination of [this] action." 12 O.S.2011 § 2001. The remedy for failure to comply with section 19.1 is a ninety-day extension within which to submit the missing affidavit. Summary judgment in favor of the GEO parties on this basis is not appropriate.

E. The Preclusive Effect of the Federal Court Judgment

¶56 The GEO parties' final argument is that Johnson's claim is precluded by the decision of the United States District Court for the Western District of Oklahoma in the related case that Johnson filed on April 19, 2012. In that case, Johnson sued the GEO Group and the correctional officer that he alleged committed the assaults. Johnson alleged that the GEO Group failed to properly supervise the officer and failed to provide adequate medical care after the assaults in violation of Johnson's federal constitutional rights. The GEO Group filed a motion for summary judgment, which the federal district court granted as to Johnson's claims for failure to supervise and failure to provide adequate medical care. The federal court entered judgment in favor of the GEO Group on November 5, 2013, noting that the case would proceed against the individual defendant. Ultimately, the case was dismissed after Johnson settled his claim against the GEO correctional officer. There is no evidence in this record showing that Johnson appealed the judgment in favor of the GEO Group.

¶57 Claim preclusion bars relitigation of issues by the same parties which either were or could have been litigated in a prior action that resulted in a judgment on the merits. State ex rel. Tal v. City of Oklahoma City, 2002 OK 97, ¶ 20, 61 P.3d 234. "The doctrine of [claim preclusion] is triggered when a judgment rendered by a court of competent jurisdiction upon a question involved in one suit is conclusive upon that question in any subsequent litigation between the same parties." Reed v. JP Morgan Chase Bank, 2011 OK 93, ¶ 9, 270 P.3d 140 (citation omitted). The issues that Johnson asserts against the GEO Group in this case appear to be the same as the issues that were resolved by the federal court judgment in favor of the GEO Group, but with one fundamental difference. Johnson's claim in federal court was based on the Eighth Amendment to the United States Constitution. His claim in this case is based on Okla. Const. art. 2, § 9. To apply claim preclusion, there must be an identity of subject matter. Dearing v. State ex rel. Comm'rs of Land Office, 1991 OK 6, ¶ 8, 808 P.2d 661. Although we have held that Johnson had an Oklahoma constitutional right to care for serious medical needs similar to his Eighth Amendment rights, the GEO Group has not shown or even argued that the Eighth Amendment right it litigated against Johnson in federal court is sufficiently identical to his state constitutional right such that the federal court judgment precludes litigation of Johnson's Article 2, § 9 right in this case. Cf., Taylor v. City of Bixby, 2018 OK CIV APP 18, ¶ 24, ___ P.3d ___ (citing Bosh v. Cherokee Cnty. Governmental Bldg. Auth., 2013 OK 9, 305 P.3d 994 (cert. denied February 26, 2018)). If the moving party has not addressed all material facts, summary judgment is not proper. Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court).

¶58 Further, GEO Care, Smith and Wood were not parties to the federal court litigation. Claim preclusion only applies to litigation in which there is an identity of "parties or their privies." Erwin v. Frazier, 1989 OK 95, ¶ 16, 786 P.2d 61. However, Johnson alleges that GEO Care is an affiliate of GEO Group and responsible for providing medical care to prisoners incarcerated in GEO Group's facilities. As to Smith and Wood, Johnson alleges that they were employees of the GEO Group and/or GEO Care and responsible for providing medical care to prisoners incarcerated in GEO Group's facilities. They also appear to be GEO Group affiliates, who could be protected by the claim preclusion doctrine and the judgment in the federal case unless it is alleged they engaged in some act or omission that was not litigated in the federal case. Johnson has not alleged specific conduct against Smith and Wood on which he bases his claim in this case.

¶59 But we cannot resolve these issues on the basis of this summary judgment record. We are unable to do so because the GEO parties did not include the judgment roll from the federal case in the record in this case.

While an appellate court can take judicial notice of its own records in litigation interconnected with a case before it, it cannot take judicial notice of records in other courts. Those who rely on a judgment for its issue-preclusive force (or for any other consequence consistent with an earlier adjudication's legal efficacy) are duty-bound to produce - as proof of its terms, effect and validity - the entire judgment roll for the case which culminated in the decision invoked as a bar to relitigation.

Salazar v. City of Okla. City, 1999 OK 20, ¶ 11, 976 P.2d 1056 (holding that failure to include the entire federal court judgment roll prevented giving preclusive effect to federal court judgment) (original emphasis and footnotes omitted). Although the appellate record in this case does contain some of the filings in the federal case and the order granting GEO Group's motion for summary judgment, it does not contain "'the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court . . . .'" Id. at n.11. The GEO parties' failure to include the entire federal court judgment roll precludes summary judgment in their favor on the basis of any preclusive effect the federal court judgment might have.

¶60 The judgment in favor of the GEO parties is vacated and Johnson's claim against them is remanded for further proceedings.

CONCLUSION

¶61 The district court's judgment in favor of the DOC is affirmed in part and vacated in part. The judgment is affirmed as to Johnson's tort claims; it is vacated as to Johnson's constitutional claim that he was denied medical care while he was in the custody of the DOC. That aspect of the case is remanded for further proceedings. The judgment in favor of the GEO parties is also vacated, and that aspect of the case is remanded for further proceedings.

¶62 AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

THORNBRUGH, C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] In Taylor v. City of Bixby, 2018 OK CIV APP 18, ___ P.3d ___ (cert. denied, February 26, 2018), this Court also held that Oklahoma prisoners have a private right of action pursuant to Article 2, § 9 based on the conditions of their confinement and the imposition of excessive fines.

[2] We need not decide whether at this point Johnson had one hundred and eighty days (51 O.S.2011 § 157(B)), or one year (12 O.S. Supp. 2017 § 95(11)) to file his suit. Johnson's Comanche County petition was filed well within either limitation period.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 45, 743 P.2d 682, 58 OBJ 1702, Spirgis v. Circle K Stores, Inc.
Discussed
 2011 OK CIV APP 116, 266 P.3d 660, EDELEN v. BOARD OF COMMISSIONERS OF BRYAN COUNTY
Discussed
 2018 OK CIV APP 18, 415 P.3d 537, TAYLOR v. CITY OF BIXBY
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1989 OK 95, 786 P.2d 61, 60 OBJ 1513, Erwin v. Frazier
Discussed
 1991 OK 6, 808 P.2d 661, 62 OBJ 435, Dearing v. State ex rel. Com'rs of Land Office
Discussed
 2001 OK 21, 24 P.3d 834, 72 OBJ 640, DIGITAL DESIGN GROUP, INC. v. INFORMATION BUILDERS
Discussed
 1994 OK 85, 878 P.2d 1045, 65 OBJ 2433, Rout v. Crescent Public Works Authority
Discussed
 1956 OK 221, 301 P.2d 212, STEMMONS, INC. v. UNIVERSAL C.I.T. CREDIT CORP.
Discussed at Length
 2002 OK 45, 55 P.3d 1036, WASHINGTON v. BARRY
Discussed at Length
 2002 OK 68, 55 P.3d 1063, WINSTON v. STEWART & ELDER, P.C.
Discussed
 1973 OK 25, 510 P.2d 943, RUNYON v. REID
Discussed
 1995 OK 143, 910 P.2d 998, 66 OBJ 4005, Cruse v. Board of County Commissioners of Atoka County
Discussed
 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed at Length
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 2007 OK 56, 164 P.3d 1073, BROWN v. CREEK COUNTY
Discussed at Length
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2010 OK 5, 237 P.3d 134, ESTATE OF CROWELL v. BOARD OF COUNTY COMMISSIONERS
Discussed
 2011 OK 93, 270 P.3d 140, REED v. JP MORGAN CHASE BANK
Discussed
 2012 OK 107, 292 P.3d 29, HOGG v. OKLAHOMA COUNTY JUVENILE BUREAU
Discussed
 2013 OK 9, 305 P.3d 994, BOSH v. CHEROKEE COUNTY GOVERNMENTAL BUILDING AUTHORITY
Discussed at Length
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed at Length
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Cited
 1981 OK 162, 638 P.2d 1116, Gay Activists Alliance v. Board of Regents of University of Oklahoma
Discussed
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
 1999 OK 20, 976 P.2d 1056, 70 OBJ 862, Salazar v. City of Oklahoma City
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 95, Limitation of Other Actions
Discussed at Length
 12 O.S. 2056, Motion for Summary Judgment
Discussed at Length
 12 O.S. 19.1, Professional Negligence Action - Expert Opinion Affidavit Requirements - Exemption
Cited
 12 O.S. 100, Limitation of New Action after Reversal or Failure Otherwise than on Merits
Cited
 12 O.S. 2001, Scope of the Oklahoma Pleading Code
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 156, Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Discussed at Length
 51 O.S. 155, Exemptions From Liability
Discussed at Length
 51 O.S. 152, Definitions
Cited
 51 O.S. 151, Short Title
Discussed
 51 O.S. 152.1, Adoption of Doctrine of Sovereign Immunity
Cited
 51 O.S. 153.1, Housing of Inmates - Action Not Allowed
Cited
 51 O.S. 157, Notice of Approval or Denial of Claim
Discussed at Length
 51 O.S. 164, Application of Oklahoma Laws and Statutes and Rules of Procedure
Cited
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 566.5, Prisoner Cause of Actions - Exhaustion of Administrative and Statutory Remedies
Discussed
 57 O.S. 566.3, Prisoner - In Forma Pauperis - Partial Payment of Costs - Inability to Pay - Grievances
Discussed
 57 O.S. 566.4, Prisoner Cause of Actions - Prohibited Actions - Venue - Special Report - Costs, Charges, Fees
Discussed at Length
 57 O.S. 564, Exhaustion of Administrative Remedies
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA